**STATE of Tennessee**

v.

**William Frederick JACKSON.**

Supreme Court of Tennessee.

Feb. 19, 1974.

David M. Pack, Atty. Gen., of Tenn., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Lewis May, Dist. Atty. Gen., Mountain City, for appellant.

Lodge Evans, Elizabethton, for appellee.

OPINION

ERBY L. JENKINS, Special Justice.

The defendant, William Frederick Jackson, was indicted in the Criminal Court of Carter County on June 14, 1971, for the offense of arson. He was tried on October 19th, 1971, and the jury found him guilty of this offense and fixed his punishment at three years imprisonment in the State Penitentiary. The Trial Court approved the verdict, overruled the defendant's motion for a new trial, and the defendant appealed this conviction to the Court of Criminal Appeals, which Court, in a unanimous opinion, reversed the Trial Court and remanded the case for further proceedings.

The defendant filed twelve assignments of error in his appeal to the Court of Criminal Appeals, but that Court, in reversing the Trial Judge, dealt principally with only one assignment of error and found that there was not sufficient evidence independent of the defendant's confession to prove that a crime of arson had been committed or that the corpus delicti had been established.

This Court granted the State's petition for certiorari.

The fire, which appeared to be of an incendiary origin, occurred about three o'clock a. m. on April 18, 1971, in a garage owned by the Westside Christian Church. Pictures taken after the fire show the building was a complete loss, the building being a frame weatherboarded structure big enough to house a large automobile. There was no electrical wiring attached to the building and nothing to indicate it could have caught fire by accident. The garage was on parsonage property of the church about a block from the home of the defendant.

The Chief of Police of Elizabethton, Harry Murray, investigated the fire, and as a result of his findings, he decided to talk with the defendant. On the morning of June 8, 1971, Chief Murray went to the home of the defendant, who was in bed, and Chief Murray left word with the defendant's wife requesting the defendant to come to the police station when he awakened. Later, the defendant went voluntarily to the Police Headquarters in response to Chief Murray's notice to his wife. He was warned of his constitutional rights. He said he understood his rights, and made a full and complete confession that he set fire to the garage.

On the trial of the case, the defendant claimed that his confession was illegally obtained, and the Trial Court conducted a hearing in the absence of the jury on this question alone, Chief Murray testifying that he advised the defendant of his rights as provided under the Supreme Court of the United States ruling, and decided after hearing proof on this issue that the confession was admissible.

The defendant was questioned for thirty to forty minutes by the officers at Police Headquarters. The officers testified he was not threatened or forced in any manner to make the confession. The defendant was asked if he had taken drugs. He replied that he was not under the influence of drugs and had not taken any drugs for two days. After the confession to the crime, the defendant went with the officers to the scene of the fire and showed them where and how he set fire to the garage. He stated he found a rag in the garage and set it afire with some rubbish.

The defendant denied all this, claiming that he was not advised of his Miranda rights, and that he did not remember going with the officers to the scene of the fire. His wife testified that he had been taking pills but that she did not know what kind of drug he was taking.

The Trial Judge, in the absence of the jury, conducted a full hearing on the issue of the admissibility of the defendant's confession and overruled the motion to suppress. In doing so, the Court found that the defendant had voluntarily gone to the Police Station and freely and voluntarily confessed after being advised of his rights, and that he had failed to show that he was under the influence of a drug when he confessed.

The jury, after returning, heard the testimony of the officers and the defendant, the officers testifying that the defendant came to Police Headquarters voluntarily and confessed to setting the fire which destroyed the garage after being fully warned of his constitutional rights, and then went to the scene of the fire and showed them where and how he had set the fire.

The Deputy State Fire Marshal testified that he examined the garage after the fire; that the building was not supplied with electricity; that paper, rubbish and rags had been burned; and that there was nothing found which could have accidentally started the fire. There was testimony by two witnesses that they saw the defendant in the vicinity of the garage as it was burning.

The defendant testified that he did not set fire to the garage. He admitted that he signed the confession but did not know

what he was signing, and that if he made a statement to the police he did not remember it. When asked where he was on the morning of the fire, he replied: "Well, me and my wife, close down work that night, about, I think a little early that night, about nine o'clock, and we went over to the Blue Room, over at the Holiday Inn where my sister works, and we drank a couple of beers over there, and then from there we went to the Crowe's Nest and stayed until about, stayed until about twelve thirty or one o'clock, and we, and we left there and my sister, she was going to follow us over you know, and cook some breakfast over at the house, and we was all ready in the house, and I looked out the window and saw the garage on fire." He stated that he stood in the yard and watched the fire for fifteen or twenty minutes and then he walked up to the fire and stayed there for five or ten minutes, and thereafter he returned to his home and went to bed.

He admitted that while he was at the Police Station the officers advised him he had a right to have a lawyer and that he did not insist upon that right because he was not guilty.

His wife corroborated his testimony as to his whereabouts on the night of the fire. His sister corroborated most of it, although not that he could not have started the fire. Two character witnesses testified in his behalf. As aforesaid, the defendant's wife testified as to his defense of an alibi, and further to the fact that she tried to get the police officers to allow her to see him and that they refused. Her testimony did not stick, the jury disregarding it, as they had a right to do, for an alibi, although one of the best defenses in a criminal case, is subject to the greatest scrutiny by a jury, since such defenses are ofttimes concocted.

The Court of Criminal Appeals, in reversing the case, relied upon the cases of Collins v. State, 1 Tenn.Cr.App. 474, 445

S.W.2d 931 (1961), and Copley v. State, 153 Tenn. 189, 281 S.W. 460 (1926). We are of the opinion these cases are not in point.

In Collins, supra, the only evidence presented was the fact the house had burned and the defendant possessed property which had been in the house prior to the fire. In the case at Bar, there is evidence which precludes any hypothesis the fire may have been accidentally set.

In Copley, supra, there was no evidence to indicate the building was burned with criminal intent.

Moreover, there was no confession in either case as in the instant case.

We are of the opinion this case is controlled by the case of Ricketts v. State, 192 Tenn. 649, 241 S.W.2d 604 (1951), wherein it is said:

"It seems to us that when there is a written confession that the corroborative evidence of this confession as to the incendiary origin of the fire need not be as convincing as evidence necessary to establish a corpus delicti in the absence of any confession. This evidence is sufficient if of itself it tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration. Thus when we have a verdict even though founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence."

■ Where, as in this case, there is a verdict of guilty by a jury, the verdict having been approved by the Trial Judge, and even though the evidence of corroboration is weak, but is tied to a confession made by the defendant, the verdict will not be disturbed by this Court, for even though the corroborative evidence may be slight, such evidence does not need to be as con-

vincing in establishing the corpus delicti as when no confession exists, as the quantum of proof need not be as great.

Arson, by its very nature, is usually committed at night, in secret and alone, and the corpus delicti can rarely if ever be proven by direct and positive testimony, and thus the State usually must rely on circumstantial evidence, the extrajudicial confession or admission of the defendant, if one exists, being an integral part in the chain of circumstances, and if shreds of evidence which tend to corroborate the confession are offered, then the jury is entitled to take all this evidence into consideration in weighing the guilt or innocence of the defendant, and when taken together the jury finds under all the facts and circumstances that the defendant is guilty, such verdict will not be disturbed.

It would appear to us from the foregoing facts that there is sufficient evidence to connect the defendant with the fire, the evidence negating any accidental or providential cause of the fire and leaving only one inference that the jury can draw and that being the fire was set by some person.

The jury had the right to infer from the facts that the defendant, going with the officers to the scene of the fire and showing them where and how he set the fire, nothing being found at the garage which could have accidentally set the fire, coupled with the defendant's presence in the vicinity of the fire, that these circumstances were sufficient to corroborate the written confession of the defendant.

The judgment of the Court of Criminal Appeals is, therefore reversed, and the action of the Trial Court affirmed.

The motions filed in this Court on behalf of the defendant have been considered and found to be without merit and are dismissed.

DYER, C. J., McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.