IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE  v.  DONALD RAY SMITH

**Appeal from the Circuit Court for Henry County**
**No. 12495     Hon. Julian P. Guinn, Judge**

---

**No. W1998-00156-SC-R11-CD  —  Decided June 30, 2000**
**FOR PUBLICATION**

---

In this appeal, we address whether prior inconsistent statements can be used substantively to corroborate a confession when the prior statements are admitted into evidence without objection. We also consider whether the failure of the trial court to instruct the jury as to the limited use of the prior statements constitutes plain error.  The Court of Criminal Appeals held that prior inconsistent statements could not be used as substantive evidence and that the failure of the trial court in this case to give a limiting instruction amounted to plain error.  For the reasons stated herein, we hold that by not objecting to the admission of the statements, the appellee waived any objection to their use by the jury as substantive evidence to corroborate the appellee's two confessions.  Consequently, we hold that the evidence in this case is sufficient to support a finding of guilt beyond a reasonable doubt.  Finally, because the decision to forgo any objection to the hearsay testimony was a deliberate, tactical decision by trial counsel, we are precluded from considering admission of the evidence under a plain error analysis.  We reverse the judgment of the Court of Criminal Appeals and reinstate the appellee's conviction and sentence for aggravated sexual battery.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Criminal Appeals is Reversed; Appellee's Conviction and Sentence for Aggravated Sexual Battery are Reinstated**

BARKER, J., delivered the opinion of the court, in which ANDERSON, C.J., and BIRCH and HOLDER, JJ., joined.  DROWOTA, J., not participating.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Daryl J. Brand, Associate Solicitor General, Nashville, Tennessee, for the appellant, State of Tennessee.

W. Jeffery Fagan, Assistant District Public Defender, Camden, Tennessee, for the appellee, Donald Ray Smith.

## OPINION

On July 29, 1996, twelve-year-old C.S.[1] told her mother that sometime during the previous January, her father, appellee Donald Ray Smith, reached his hand underneath her shorts and touched her "private parts." The next day, Ms. Smith took C.S. to the Tennessee Department of Human Services, where C.S. related the same story in more detail to Carolyn Gore, an employee with Children's Services, and to Gary Vandiver, an investigator with the Henry County Sheriff's Office. According to her story, C.S. was at home with her father one evening in January 1996 while her mother was at work. C.S. was lying on the floor watching television when her father asked her to sit with him on the couch. When C.S. sat down beside her father, he began rubbing the inside of her leg with his hand and moved his hand underneath her shorts and panties. C.S. stated that her father then touched her "private parts," at which point C.S. demanded that he stop. The appellee then offered her money and candy for her silence.

After the meeting with C.S. and her mother on July 30, Officer Vandiver left to arrest the appellee. Although Officer Vandiver had some difficulty locating the appellee that afternoon, he found and arrested the appellee later that evening and took him to the police station. Shortly after arriving at the police station, the appellee waived his *Miranda* rights in writing and gave a tape-recorded confession, wherein he admitted to touching and rubbing his daughter in substantially the same manner as previously described by C.S. One week later, after being arrested and released on bond, the appellee returned to the police station on his own accord. The appellee again waived in writing his right to remain silent and to have counsel present, and he signed a written confession again admitting to the improper touching and rubbing of his daughter.[2]

On November 6, 1996, a Henry County Grand Jury returned an indictment charging the appellee with one count of aggravated sexual battery against his daughter. Following a plea of not-guilty, the appellee was tried before a jury on January 28, 1998.[3] The first witness called by the State to testify was C.S., and when the district attorney asked her to relate to the jury how her father abused her, C.S. recanted her earlier accusations and replied simply that "[h]e didn't do anything." When asked whether she had previously told her mother that her father had touched her "in a bad way," C.S. admitted that she had and that she told the same story to Ms. Gore and Officer Vandiver. Even as the district attorney meticulously reiterated the details of her previous statements, C.S. was

---

[1] It is the policy of this Court not to identify minor children involved in sexual abuse cases by name. Instead, we will identify the minor victim in this case only by her initials.

[2] Although the statement was actually handwritten by Officer Vandiver, the appellee signed the statement after carefully reading and adopting it.

[3] The appellee originally pled guilty to the charge and was sentenced by the trial court to serve eight years imprisonment. His conviction was set aside, however, in a post-conviction proceeding. The issues in this case arise from the subsequent retrial of the case.

adamant that no such incident occurred, although she repeatedly admitted making the statements.[4]

The appellee made no objection to the introduction of C.S.'s prior statements by the State. On cross-examination, the appellee questioned C.S. in detail about her prior statements, including why she made the accusations, how she knew what type of accusations to make, and how she knew which particular words to use. C.S. also denied that the reason she recanted her accusations was because someone convinced her to change her mind.

The State then called the appellee's wife as a witness and asked her about the statements C.S. made to her in July of 1996. Ms. Smith admitted that C.S. told her that the appellee touched her inappropriately, and that she fully believed C.S.'s accusations. Ms. Smith denied, however, that she contacted Children's Services or any law-enforcement officer. Ms. Smith also stated that C.S. told her sometime after the appellee was arrested that no touching occurred. The appellee again made no objection to the introduction of C.S.'s prior statements made to Ms. Smith.

Next, the State called Carolyn Gore to testify as to the detailed statements given to her by C.S. on July 30, 1997. Officer Vandiver was also called as a witness by the State to testify as to the allegations made to him by C.S. In addition, Officer Vandiver played the appellee's tape-recorded confession for the jury, and he read to the jury the handwritten confession signed and adopted by the appellee.[5] As with the State's two other witnesses, the appellee did not object to the introduction of C.S.'s prior statements made to either Ms. Gore or to Officer Vandiver. Instead, the appellee questioned Ms. Gore about the details of C.S.'s accusations and how Ms. Gore became aware of the accusations.

The appellee rested his case after putting on no proof, and he argued to the jury that C.S.'s former statements were not credible in light of her trial testimony. Nevertheless, the jury returned a guilty verdict on the sole count of the indictment, and on March 9, 1998, the appellee was sentenced to eight years imprisonment. In his motion for a new trial, the appellee asserted that the trial court erred in not granting a judgment of acquittal and that the evidence was insufficient as a matter of law to sustain the conviction. The motion was denied on April 22, 1998, and the appellee filed a timely notice of appeal to the Court of Criminal Appeals.

---

[4] At trial, C.S. testified that she made these allegations because her sister, Kim, offered her twenty dollars to do so. Kim was apparently dating a boy of whom the appellee did not approve.

[5] The handwritten confession reads as follows:
I, Donald Smith, during Jan. 1996 was at home with my 12 yea [*sic*] daughter [C.S.] and my handicapped son. My son was in his bedroom. [C.S.] and I was [*sic*] in the living room. [C.S.] was laying on the couch. I was sitting on the couch. [C.S.'s] legs were over mine. I began rubbing her leg. I rubbed up her leg up under her shorts and panties. I rubbed her vagina area on pubic hair for about a minute. [C.S.] said "Don't, I don't want to." I stopped[.] I said I was sorry, I will not ever do it again.

Although not raised as an issue by the appellee, the Court of Criminal Appeals held that the trial court committed plain error in failing to instruct the jury that the prior statements of C.S. should be considered only for impeachment purposes and not as substantive evidence of guilt. While the full panel reversed the conviction on the basis of this plain error, a majority of the panel voted further to dismiss the case because no substantive evidence corroborated the appellee's confession. Writing in partial dissent, Judge Joe G. Riley stated that because the trial court's failure to give a limiting instruction was merely an evidentiary error, a new trial was the more appropriate remedy.

In the appeal before this Court, the State has asked us to consider whether a victim's prior statements, though otherwise inadmissible hearsay, may be considered by a jury as substantive evidence of guilt when the defendant does not object to their admission, and consequently, whether the evidence in this case is sufficient for conviction. We hold that under the circumstances of this case, the prior statements of C.S. could have been considered by the jury as substantive evidence of the appellee's guilt, and that these statements adequately corroborated the appellee's two confessions so as to support the jury's verdict. Because we also disagree that the trial court committed plain error in this case, we reverse the judgment of the Court of Criminal Appeals.

## I. SUFFICIENCY OF THE EVIDENCE

The State's primary argument in this case is that the Court of Criminal Appeals erred in reversing and dismissing the appellee's conviction for lack of substantive evidence. When the sufficiency of the evidence is challenged, "the standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); see also Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); State v. Burns, 979 S.W.2d 276, 286-87 (Tenn. 1998); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In determining the sufficiency of the evidence, this Court does not re-weigh the evidence, id., or substitute its inferences for those drawn by the trier of fact. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).

### A. Prior Inconsistent Statements as Substantive Evidence

Because the sufficiency of the evidence question turns on the effect given to C.S.'s prior statements, the first issue we must resolve is whether the prior inconsistent statements in this case could have been considered by the jury as substantive evidence of the appellee's guilt. As with any evidence, a prior inconsistent statement may be offered for any purpose at all, although its *admissibility* may be limited to certain issues depending upon the purpose for which it is offered. It is an elementary principle of evidence law that certain types of evidence may be admissible for some purposes but not for others. See Tenn. R. Evid. 105; see also, e.g., Tenn. R. Evid. 404(b), 406-409, 801.

Our cases have consistently held that a prior inconsistent statement is admissible under the Rules of Evidence when the prior statement is used to impeach the credibility of a witness. See, e.g., Jones v. Lenoir City Car Works, 216 Tenn. 351, 356, 392 S.W.2d 671, 673 (1965) (stating that "prior inconsistent statements of a witness are admissible for the purposes of impeachment and testing the credibility of the witness"). On the other hand, the restriction on hearsay evidence limits the admissibility of prior inconsistent statements when a party offers the prior statements as evidence to prove the matter asserted in the statement, or as substantive evidence. See id. (stating that prior inconsistent statements "are not to be considered as substantive evidence of the truth of the matter asserted therein"); see also Rhea v. State, 208 Tenn. 559, 563, 347 S.W.2d 486, 488 (1961) (stating that "any prior contradictory statements shown are not to be taken as evidence of the facts therein stated but are simply limited to the function of discrediting the witness").[6] Upon timely objection, the trial court should exclude a prior inconsistent statement when offered as substantive evidence of guilt or innocence, and upon request, the court should instruct the jury that the prior statement may only be considered as reflecting upon the credibility of the witness. See Tenn. R. Evid. 105 (stating that "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly").

A trial court, however, generally has no duty to exclude evidence or to provide a limiting instruction to the jury in the absence of a timely objection. A party may consent to the admissibility of evidence which is otherwise prohibited by the Rules, so long as the proceedings are not rendered so fundamentally unfair as to violate due process of law. Cf. Clarke v. State, 402 S.W.2d 863, 869 (Tenn. 1966). As early as 1885, this Court has stated that parties "may admit illegal evidence, if they don't choose to object. If they do not want to admit it, they should object as soon as it is offered, or its illegality appears." See Baxter v. State, 83 Tenn. (15 Lea) 657, 665 (1885) (allowing statements of victim identifying the defendant, though inadmissible under the dying declaration exception to the hearsay rule, because the defendant chose not to object to the statements). See also Harless v. State, 189 Tenn. 419, 422, 225 S.W.2d 258, 259 (1949) ("No objection being interposed to the testimony of the officer as to what a bystander said[,] it may properly be considered and given its natural probative effect as if it were in law admissible."). This same principle is reflected today in Rule of Evidence 103(a)(1), which requires that a timely objection be made to preserve an error, and it is also reflected in Tennessee Rule of Appellate Procedure 36(a), which requires that a party take any action reasonably available so as to prevent an error or to mitigate its harm.

When a party does not object to the admissibility of evidence, though, the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its "natural probative effects as if it were in law admissible." State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981). If a prior inconsistent statement does not fall within a recognized exception to the hearsay rule, for example, it is certainly subject to objection as hearsay

---

[6] In contrast to our Rules, the Federal Rules of Evidence do allow prior inconsistent statements to be considered as substantive evidence under some circumstances. See Fed. R. Evid. 801(d)(1)(A).

and limitation under the Rules of Evidence. Merely being subject to objection, however, does not mean that such evidence cannot be considered for its substantive value when no objection is raised.

In cases of hearsay evidence in particular, this Court has stated that when such evidence is admitted without objection, "it is, therefore, rightly to be considered as evidence in the case and is to be given such weight as the jury think[s] proper." State v. Bennett, 549 S.W.2d 949, 950 (Tenn. 1977). Indeed, in Casone v. State, 193 Tenn. 303, 315-16, 246 S.W.2d 22, 28 (1952), this Court went so far as to say that "it has been held almost universally that when hearsay testimony is admitted without objection[,] *it may probably be considered and given its natural probative effect as if it were in law admissible*, the only question being with regard to how much weight should be given thereto." (emphasis added). See also In re Estate of Parsley, 864 S.W.2d 36, 39 (Tenn. Ct. App. 1988) ("The general rule is that hearsay, unobjected to, may be considered and given its natural probative effect . . . .").

We are simply unable to conclude that the prior inconsistent statements of C.S., although subject to objection and limitation, could not be used as substantive evidence of the appellee's guilt when the appellee made no objection to the State's repeated use of the statements. As our cases make clear, a failure to object to otherwise inadmissible evidence will allow that evidence to be considered as if it were, in fact, fully admissible under the law of evidence. We decline to depart from this long standing rule in this case.

We note that a growing number of jurisdictions have adopted the position that prior inconsistent statements may be used as substantive evidence of the matters asserted therein, particularly when the declarant testifies at trial and is subject to cross-examination.[7] Our holding today does nothing to change our now minority position that such statements are inadmissible hearsay if offered as evidence of the facts to which the prior statement relates, although we do continue to allow the parties to waive this objection if they so choose.

---

[7] See generally Andrea G. Nadel, Use or Admissibility of Prior Inconsistent Statements of Witness as Substantive Evidence of Facts to Which They Relate in Criminal Cases—Modern State Cases, 30 A.L.R.4th 414 (1984 & Supp. 2000). In discussing Pennsylvania's switch to allow substantive use of prior inconsistent statements, one commentator asserts that

> Relying primarily on the same rationale as that employed in [Commonwealth v.] Brady, [507 A.2d 66 (Pa. 1986),] forty-one states have elected to follow some version of the modern rule, and thus allow the admission of a non-party witness' prior inconsistent statements as substantive evidence. Only eight states and the District of Columbia still fully adhere to the orthodox rule and refuse to admit a witness' prior inconsistent statements as substantive evidence.

See Jennifer L. Hilliard, Substantive Admissibility of a Non-Party Witness' Prior Inconsistent Statements: Pennsylvania Adopts the Modern View, 32 Vill. L. Rev. 471, 489-91 (1987). Tennessee is listed among the nine jurisdictions that still retain the "orthodox" rule.

### B. Prior Statements as Corroborating Evidence

The appellee argues that even if the prior statements of C.S. are considered as substantive evidence, the inconsistencies between her prior statements and her trial testimony fail to sufficiently corroborate the confession so as to sustain the conviction. It is a well-established principle of law in this state that a conviction cannot be founded solely upon a defendant's confession, and our cases have long required some corroborating evidence in order to establish the corpus delicti. See Ashby v. State, 124 Tenn. 684, 697-98, 139 S.W. 872, 875 (1911). The term *corpus delicti* refers to "the body of the crime [or] evidence that a crime was committed at the place alleged in the indictment," Van Zandt v. State, 218 Tenn. 187, 202, 402 S.W.2d 130, 136 (1966), and the state needs "only slight evidence of the corpus delicti . . . to corroborate a confession and sustain a conviction." See, e.g., State v. Driver, 634 S.W.2d 601, 606 (Tenn. Crim. App. 1981). Indeed, as this Court has discussed in connection with a confession supporting an arson conviction,

> [the corroborating] evidence is sufficient if . . . it tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration. Thus when we have a verdict[,] even though founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence.

Ricketts v. State, 192 Tenn. 649, 664-65, 241 S.W.2d 604, 606 (1951).

When the prior statements of C.S. are considered as proof of the matters stated therein, we find that the statements fully corroborate both of the appellee's confessions. C.S. admitted at trial that her original allegations contained the following facts: (1) that the incident occurred in January of 1996; (2) that it happened in the evening while her mother was at work; (3) that her brother was at home in his bedroom; (4) that she was watching T.V. in the living room with her father, who was sitting on the couch; (5) that her father asked her to sit on the couch with him; (6) that her father began to rub the inside of her leg with his hand; (7) that he ran his hand underneath her shorts and underwear; (8) that her father touched her "private parts"; and (9) that she told him to stop.

By way of comparison, the appellee, who apparently knew nothing of the particulars of these allegations, stated the following facts in his first confession: (1) that the incident occurred in January of 1996; (2) that he rubbed his daughter's leg; (3) that he rubbed under her clothes; and (4) that he touched her in her groin area. In addition to these facts, the appellee in his written confession admitted that (1) his son was at home in his bedroom; (2) that he and his daughter were sitting on the couch at the time the incident happened; and (3) that his daughter told him to stop.

When the prior statements of C.S. are considered for their substantive value, as the jury was entitled to do in the absence of an objection or limiting instruction, it is clear that there was substantial corroboration of the confession to establish the corpus delicti. In fact, the allegations that C.S. made to her mother, Ms. Gore, and Officer Vandiver, corroborate virtually every aspect of both

of the appellee's confession in substantial detail. Under these circumstances, we have no hesitation in concluding that the evidence was more than sufficient to convict the appellee of aggravated sexual battery.

The appellee argues that a confession cannot be corroborated by a recanted accusation. We disagree. Although the jury in this case was presented with alternative versions of the facts, it was entitled to decide and resolve for itself the inconsistencies in the evidence presented to it. It is clear from the verdict in this case that the jury chose to credit the prior statements of C.S. over her testimony at trial, and we will not re-weigh this finding. All three judges on the intermediate court agreed that if the prior statements are considered for their substantive value, then the evidence is sufficient in this case to support the conviction beyond a reasonable doubt. We agree with this determination and conclude that when the prior statements of C.S. are substantively considered along with the two confessions given by the appellee, the corpus delicti of the crime has been acceptably demonstrated. Accordingly, we hold that the proof is sufficient to establish the appellee's guilt of the charged offense beyond a reasonable doubt.

Citing this Court's opinion in Johnson v. Cincinnati, N.O. & T.P. Railway Co., 146 Tenn. 135, 240 S.W. 429 (1922), the appellee contends that when the sole witness both affirms and denies that a particular act happened, "it would be mere caprice in a jury upon such evidence to decide [the issue] either way." We agree with the appellant that if C.S.'s prior statements were the *only* evidence of the crime committed, then a conviction could not be sustained. Nevertheless, the prior statements in this case are needed only to corroborate the appellee's confessions, and "even though the corroborative evidence may be slight, such evidence does not need to be as convincing in establishing the corpus delicti as when no confession exists . . . ." State v. Jackson, 506 S.W.2d 146, 148-49 (Tenn. 1974). The prior statements, as substantive evidence credited by the jury, far exceed the relatively low threshold required to corroborate a confession, and we hold that the State has met its burden in this case.

## II. PLAIN ERROR ANALYSIS

Although the appellee did not raise the issue in the intermediate court, the Court of Criminal Appeals found that the failure of the trial court to instruct the jury in this case as to the evidentiary effect of C.S.'s prior statements constituted plain error. We disagree.

Notwithstanding our finding that a failure to object to the introduction of C.S.'s prior inconsistent statements as substantive evidence, Rule of Appellate Procedure 36(b), Rule of Evidence 103(d), and Rule of Criminal Procedure 52(b) allow this Court to take notice of "plain errors" that were not raised in the proceedings below. No guidance is given by any of these rules as to when an error will rise to the level of plain error, but we have previously stated that "[w]hether or not an appellate court should recognize the error and grant relief in the absence of an objection in the trial court must depend upon the facts and circumstances of the particular case." State v. Ogle, 666 S.W.2d 58, 61 (Tenn. 1984).

The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994); see also Ogle, 666 S.W.2d at 60 (discussing this issue in the context of a Bruton error, and stating that a conviction based on improper evidence admitted without objection may be reversed when "(1) the statement constitutes plain error, (2) the statement was an important part of the state's case, and (3) the objection was not intentionally waived for tactical purposes").

Because the Adkisson test provides a clear and meaningful standard for considering whether a trial error rises to the level of plain error in the absence of an objection, we formally adopt this test when reviewing a record for plain error. We re-emphasize that the presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. In addition, the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642.

After a thorough review of the record in this case, we conclude that the plain error doctrine can afford no relief for the appellee. As the fourth factor in the Adkisson test recognizes, "it is well-established that [the] plain error rule is not applicable when the record reflects that a defendant made a deliberate, tactical choice to waive an objection." State v. Walker, 910 S.W.2d 381, 399 (Tenn. 1995) (Anderson, C.J., concurring, joined by Drowota, J., and Birch, J.). According to the concurring opinion in Walker, the rationale behind this exception to the plain error rule is that

> [t]he plain error rule "should not be used to provide a second bite at the apple for a defendant whose deliberate trial strategy failed." United States v. Valencia-Lucena, 925 F.2d at 514. To apply the plain error rule under such circumstances would encourage defense counsel to gamble for a favorable verdict, and should the verdict be unfavorable, resort to appeal on errors which might have been obviated on objection. United States v. Campbell, 419 F.2d 1144, 1145 (5th Cir.1969).

910 S.W.2d at 400. The Court of Criminal Appeals has also recognized that "a party cannot, either in a civil or criminal case, sit by and not object to testimony, take his chance of acquittal or conviction on testimony deemed incompetent, and then ask a reversal for such testimony in this court." See McKenzie v. State, 3 Tenn. Crim. App. 362, 368, 462 S.W.2d 243, 246 (1970)).

The record is clear in this case that the decision not to object to the prior inconsistent statements of C.S. was a result of a deliberate, tactical trial strategy.[8] The appellee's theory of the

---

[8] Although the intermediate court found plain error in this case relying on the Adkisson factors, it did not address the fact that the decision to forgo objection to the prior statements was the

case all along has been that inconsistent statements by one witness cannot be the sole proof used to corroborate a confession. To this end, the appellee did not object to any of C.S.'s prior inconsistent statements when the State questioned C.S. herself, when the State questioned her mother, when the State questioned Ms. Gore, or when the State questioned Officer Vandiver. Moreover, defense counsel cross-examined all four witnesses at length about the prior inconsistent statements. For example, counsel questioned C.S. about her motives in making the prior statement, how she knew exactly what type of accusations to make, and who told her the particular words to use. When the State places objectionable evidence before the jury, and defense counsel inquires at length about the evidence on cross-examination, any error in admitting the evidence is generally cured. Marable v. State, 203 Tenn. 440, 456, 313 S.W.2d 451, 458-59 (1958) (stating that "the objectionable evidence [results of a lie detector test] after being volunteered by a State witness was gone into at length by further cross examination on the subject by the plaintiff in error. Under such circumstances, we think that if the evidence was objectionable[,] it is cured.").

Most importantly, though, counsel for the appellee conceded in oral argument before this Court that the decision not to object to admission of the prior inconsistent statements was a "tactical decision." Because counsel and the appellee were concerned as to the ability of the appellee to make a good witness, they both agreed that the best strategy was to forgo objection to the prior statements in an effort to convince the jury that C.S. had no credibility. "It is difficult to conceive of evidence more probative of an attorney's reason for not objecting than the attorney's own statement." Walker, 910 S.W.2d at 400. Accordingly, for all of these reasons, we hold that because the decision to forgo objection to admission of C.S.'s prior inconsistent statements as substantive evidence was a deliberate, tactical decision by trial counsel, we can find no plain error in this case.[9]

Because we have concluded that the alleged plain error in this case was the result of a deliberate, tactical decision on the part of counsel, our decision in State v. Reece, 637 S.W.2d 858 (Tenn. 1982), upon which the intermediate court relied, can provide no relief for the appellee. In Reece, we held that "the failure to give the limiting instruction may amount to fundamental error constituting grounds for reversal, even in the absence of a special request." 637 S.W.2d at 861. We expressly limited our holding, however, to "those exceptional cases in which the impeaching testimony is extremely damaging, the need for the limiting instruction is apparent, and the failure to give it results in substantial prejudice to the rights of the accused." Id. Because a trial court's failure to give a limiting instruction must "result in substantial prejudice to the rights of the accused," Reece cannot afford relief when trial counsel makes a tactical decision to forgo an

result of a tactical decision.

[9] Although the policy behind the plain error rule is "that the client should be protected against egregious errors of counsel," see Neil P. Cohen, et al., Tennessee Law of Evidence § 103.7, at 24 (3d ed. 1995), the plain error rule cannot be used to second-guess the deliberate decisions of trial counsel. "Whether a second-guessing appellate court thinks a tactical decision is inspired or poor is not the issue on direct appeal. The issue is whether the action, or in this case, the inaction, was the result of a deliberate, tactical decision." Walker, 910 S.W.2d at 400.

-10-

objection. When a defendant makes a considered and deliberate choice to waive a proper objection in an effort to gain tactical advantage, he or she will not later be heard to complain that the trial court's failure to provide a limiting instruction "substantially prejudiced" his or her rights.[10]

## CONCLUSION

In summary, we hold that a prior inconsistent statement by a witness may be considered by the trier of fact as substantive evidence of the matters asserted therein, but only when the party against whom the statement is offered fails to object to its admission or fails to request a limiting instruction. Consequently, we conclude that the appellee's confessions in this case, taken together with the prior statements of the victim, furnished sufficient evidence to support a finding of guilt of aggravated sexual battery beyond a reasonable doubt. Further, because the appellee's waiver of any objection to the admission of the hearsay evidence was the result of a deliberate, tactical trial strategy, we are precluded from finding that the plain error doctrine affords any relief in this case. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the appellee's conviction and sentence for aggravated sexual battery.

Costs of this appeal shall be paid by the appellee, Donald Ray Smith, for which execution shall issue if necessary.

---

[10] Of course, a different case may be presented if trial counsel makes a deliberate, tactical decision to waive a *fundamental* right of the accused without first obtaining his client's informed consent. See Momon v. State, No. E1996-00007-SC-R11-PC,1999 WL 1146746 (Tenn. filed at Knoxville Nov 15, 1999), reh'g granted, March 20, 2000. In this case, though, it is not argued that the right to exclude hearsay is a fundamental right guaranteed by the state constitution and statutes, or that the appellee himself did not consent to the trial strategy of counsel. Accordingly, we cannot conclude that the rights of the appellee have been substantially prejudiced so as to require relief under the plain error doctrine.