IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2001

**STATE OF TENNESSEE v. TERRANCE ROGERS**

**Direct Appeal from the Circuit Court for Madison County**
**No. 98-80    Roy B. Morgan, Jr., Judge**

---

**No. W2001-00528-CCA-R3-CD  - January 15, 2002**

---

Defendant, Terrance Rogers, appeals the revocation of his community corrections sentence. Defendant contends that the court erred by revoking his sentence for failing to report a new arrest, and for the alleged possession of cocaine.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

George Morton Googe, District Public Defender; and Stephen P. Spracher, Assistant Public Defender, Jackson, Tennessee, for the appellant, Terrance Rogers.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In September 1998, the Defendant entered a plea of guilty to Class D felony vandalism and was placed on deferred probation for a period of four (4) years, pursuant to Tennessee Code Annotated section 40-35-313.  After violating his probation in numerous ways, in November 2000, Defendant's deferred probation was revoked and judgment was entered reflecting a conviction for Class D felony vandalism.  Defendant was sentenced to four (4) years in the Department of Correction.  However, Defendant was ordered to serve the sentence in the Madison County Community Corrections program.

A violation report was filed by Defendant's community corrections supervisor.  The report, which was entered as an exhibit without objection, charged the Defendant with violating his "behavioral contract."  The relevant portion of Defendant's "behavioral contract" stated "I will remain arrest, drug, and alcohol free.  I will report all arrests, including traffic citations, the next

working day. I will obey the laws of the United States or any State in which [I] may be as well as any municipal ordinances." According to the violation report, Defendant was arrested on January 19, 2001 for possession of Schedule II drugs and he failed to report his new arrest to his community corrections supervising officer.

The revocation hearing was held on February 20, 2001. The testimony at the revocation hearing was sparse, but straightforward. Defendant did not testify. However, his community corrections supervisor, Shirley Cerrato, did testify. Ms. Cerrato testified that she had been supervising the Defendant since approximately November 20, 2000, and that he had never reported any new arrests. Her report, quoted from above, was admitted into evidence during her direct examination. During cross-examination, Ms. Cerrato reiterated that she never received any phone call or any other message from the Defendant concerning his arrest for possession of Schedule II drugs. However, she testified that she was notified of Defendant's arrest by the "jail list" that was sent to her office on the morning after his arrest. There was no testimony at the hearing as to whether Defendant was released on bail following his arrest on charges of possession of Schedule II drugs, or whether he remained incarcerated up until the time of the revocation hearing. Ms. Cerrato acknowledged that the community corrections office has a "block" on its phone to prevent calls from the Madison County Jail to the community corrections office. She testified that some offenders on community corrections who are arrested and placed in the Madison County Jail make "three-way" calls to communicate with their supervising officers.

Madison County Sheriff's Deputy Fenn (no first name was provided in the record) testified that in January 2001, he assisted another deputy in a traffic stop in Madison County. While at the traffic stop, Deputy Fenn came in contact with the Defendant and conducted a pat-down search of Defendant. Deputy Fenn testified on direct examination, without objection being made by Defendant, that he found a plastic baggie which contained crack cocaine in Defendant's left shoe. During cross-examination, the deputy acknowledged that he did not perform a field test on the substance which he believed to be crack cocaine. During redirect examination, the State elicited testimony from Deputy Fenn concerning his prior experience as a law enforcement officer in coming in contact with crack cocaine. Finally, Defendant's counsel objected to the officer being able to testify as an expert. The trial court overruled the Defendant's objection. Continuing redirect examination, Deputy Fenn described the substance which he believed to be crack cocaine as a small rock, light yellow in color. During closing arguments, Defendant's counsel argued that the court should not consider any evidence pertaining to possession of drugs because competent proof had not been submitted that the substance found in the shoe was a Schedule II drug. However, at no point did defense counsel, prior to closing arguments or during closing arguments, move the court to strike Deputy Fenn's direct examination testimony for any reason. There was no proof that Defendant had been convicted of possession of crack cocaine at the time of the revocation hearing. In fact, the trial court stated that Defendant had not yet been convicted of any drug offense resulting from the January 2001 incident.

**ANALYSIS**

Revocation procedures for probation and community corrections are treated similarly. See State v. Harkins, 811 S .W.2d 79, 82 (Tenn. 1991); cf. State v. Taylor, 992 S.W.2d 941, 945 (Tenn. 1999). Thus, to revoke a community correction sentence the trial judge must find that the offender violated a term of his probation by a preponderance of the evidence. See Harkins, 811 S.W.2d at 82 (citing Tenn. Code Ann. § 40-35-311(e) (1991); See also Tenn. Code Ann. § 40-36-106(e)(4) (Supp. 2001).

We must review the revocation of a community corrections sentence for an abuse of discretion. See Harkins, 811 S.W.2d at 82. Discretion is abused when the record fails to contain substantial evidence to support the trial court's conclusion that a violation occurred. See id.; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment. See Gregory, 946 S.W.2d at 832; State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

In his first issue, Defendant argues that the "trial court abused its discretion by allowing the testimony of Deputy Fenn that the substance found in defendant's shoe was crack cocaine, without requiring scientific proof of that fact."

However, Defendant did not object to this testimony when it was given during direct examination. In State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000), our Supreme Court stated that "a trial court, however, generally has no duty to exclude evidence or to provide a limiting instruction to the jury in the absence of a timely objection. A party may consent to the admissibility of evidence which is otherwise prohibited by the Rules, so long as the proceedings are not rendered so fundamentally unfair as to violate due process of law." Id. A defendant is required to make a timely objection in order to preserve an error for review on appeal. Tenn. R. Evid. 103(a)(1). In addition, Tennessee Rule of Appellate Procedure 36(a), requires that a party must take any action reasonably available so as to prevent an error. Defendant did not object when Deputy Fenn unequivocally stated that the substance found in Defendant's shoe was crack cocaine. Even if Deputy Fenn's testimony that the substance was crack cocaine was inadmissible, subject to a proper objection, Defendant failed to object at the appropriate time, i.e., when the evidence was admitted. Furthermore, prior to any objection being made by Defendant, Deputy Fenn testified during redirect examination that in his law enforcement experience, he had, on previous occasions, come in contact with substances he believed to be crack cocaine which were later tested and proven to be crack cocaine. Defendant's due process rights were not violated by the admission of the testimony of Deputy Fenn that the substance in Defendant's shoe was crack cocaine. Defendant is not entitled to relief on this issue.

In his second issue, Defendant argues that based upon the proof offered at the revocation hearing, the trial court erred by revoking his community corrections sentence for failure to contact his supervisor after his arrest. Specifically, Defendant argues that he should not have been found in

violation of any condition requiring him to contact his supervisor when the proof showed that he was unable to make a connecting telephone call from the jail to the community corrections office because of a "block" on the phone.

We first note that there is no explanation in the record as to why the community corrections office has a "block" on its phone preventing anyone from the county jail to call the community corrections office. If a person serving a community corrections sentence is arrested, it appears that the community corrections supervising officers would want that person to contact them as soon as possible, as reporting an arrest is a very important condition of the "behavioral contract." Common sense dictates that a "block" on all phone calls from the Madison County Jail would hinder, rather than enhance, the communication between a person serving a community corrections sentence and his/her supervisor. It appears to be a matter of convenience for the community corrections supervisor rather than a policy to assist in carrying out the purposes, responsibilities, and duties of all persons involved in the service of a community corrections sentence.

Nevertheless, the responsibility of contacting a supervising officer upon a new arrest is squarely upon the defendant who is serving the sentence. From this record, we are only aware that between his arrest in January 2001 and the revocation hearing on February 20, 2001, Defendant never contacted his supervising officer regarding his new arrest. Part of the responsibility of serving a community corrections sentence is to follow all of the rules imposed, which includes reporting all new arrests. It does not matter that Defendant's supervising officer was notified of his arrest through a third source (the jail list provided each day to the office). At the very least, Defendant could have sent written notice to the supervising officer concerning his new arrest in the time period between his arrest and the revocation hearing some weeks later. Therefore, we find that the policy of "blocking" calls from the jail to the community corrections office is not controlling in this particular case. However, if the method of contact used by a defendant had been an issue, or if the time period between the arrest and the contact was at issue, proof that telephone calls were intentionally "blocked" by the community corrections office could be a controlling factor in determining whether Defendant violated that particular condition of his community corrections sentence. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the reasons stated herein, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-4-