IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 11, 2006 Session

## STATE OF TENNESSEE v. ROBERT SMITH

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-09026     Joseph B. Dailey, Judge**

—————

**No. W2005-00015-CCA-R3-CD  - Filed November 3, 2006**

—————

Robert Smith, the defendant, appeals from a Shelby County jury conviction for second degree murder (Class A felony).  The defendant was sentenced to sixty years as a career violent offender.  In his sole issue the defendant maintains that the evidence does not support his conviction in that it was insufficient to prove a knowing killing.  After review, we affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Robert K. Guibao (on appeal) and Larry E. Copeland, Jr. (at trial), Memphis, Tennessee, for the appellant, Robert Smith.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was indicted on a single count of second degree murder for the killing of Anthony Dorsey, Sr. on October 4, 2002.  A jury convicted the defendant as charged, and he was later sentenced to sixty years imprisonment as a career offender.  The defendant's brother, Albert Smith, was tried jointly for facilitation of second degree murder and was found not guilty.  On appeal, the defendant concedes that the evidence could justify a lesser included offense but does not support the convicted offense.  Specifically, the defendant asserts that the evidence did not prove the mens rea of a knowing killing.

When reviewing a sufficiency challenge on appeal, the standard is "whether, considering the evidence most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002).

After a verdict of guilt, the burden shifts to the defendant to demonstrate why the evidence is insufficient to support the verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). Questions concerning the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, and the reviewing court does not re-weigh or re-evaluate the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Factual Background

As noted above, on appeal we must view the evidence in the light most favorable to the prevailing party. The State presented witnesses who were present at the time when Anthony Dorsey Sr., was fatally shot by the defendant. Their accounts were, in the main, consistent as to the events concerning the shooting on October 4, 2002. Those individuals present during the offense and testifying for the State were: Anthony Dorsey, Jr., Lacotra Blair, Taneka Blair, Antoinette Dorsey, Marcus Stephen, Reginald Sanders, and Christine Sanders. Reginald Sanders was the victim's nephew. Christine Sanders was a neighbor who lived in the adjoining duplex to the victim and his family. The remaining witnesses were the victim's children.

On October 3, 2002, two eleven-year-old boys engaged in a fight. They were Anthony Dorsey, Jr., the victim's son, and Travis Watt, the son of the defendant. On the next day, the boys had another encounter in which Travis Watt struck Anthony Dorsey, Jr., with a pipe, causing a knot and bleeding. The victim, Dorsey, Sr., was informed of this by his son, and he first reacted by saying that they would settle the matter with the school principal on the coming Monday. Anthony, Jr., had seen the defendant pick up Travis Watt and his younger brother after the October 4 fight and leave in a black car with a red stripe. The victim and Anthony, Jr., went in search of the defendant, but the search was unavailing and they returned home. Anthony, Jr., left with his cousin, Reginald, and they were later picked up by Marcus Stephen and his friend Marcus Hall, aka "Black." Hall was driving Marcus Stephen's car. In the interim, the defendant, accompanied by his brother, Albert Smith, and the defendant's two sons, Travis Watt and Marco, had gone to the victim's residence. The victim met the defendant in the victim's front yard where a discussion ensued. The group in Marcus Stephen's car arrived and walked toward the assembly in the yard. The defendant then pulled a handgun and grabbed Marcus Stephen, threatening to blow his head off. The defendant also ordered the group not to move. Reginald Sanders ran to the house, and the defendant pursued him. The victim followed and, on the porch, grabbed the defendant, restraining him from entering the residence. The victim and defendant struggled until the defendant freed his arm and began firing the gun. The victim collapsed on the porch. The defendant then fell backward from the porch, still firing the gun. The defendant continued to fire the weapon as he regained his feet and ran to the car. The car, driven by Albert Smith, then sped away. Travis Watt sustained a bullet wound to the arm as they were escaping. He stated that he saw an individual emerge from the victim's house, shooting a weapon. Albert Smith stated that both Marcus Hall and Reginald Sanders were firing at their car as the defendant's group left the scene. None of the State's witnesses admitted to seeing anyone with a gun except the defendant.

Officer Ricky Davison of the Memphis Police Department crime response unit, testified that a .9 mm casing was found on the porch and another was found near the foot of the driveway. Three .32 caliber casings were found in the lawn in a straight line toward the street. No weapons were recovered, and no ballistic tests were performed.

Tara Jones testified that she dated Albert Smith in October 2002. Albert Smith had her car on October 4. When she saw her car several days later, it had bullet holes in the passenger side and the passenger window was broken out. On October 5, she had borrowed a car and taken the defendant and Albert Smith to attempt to rent a car. They were unsuccessful due to a faulty credit card. She then delivered the defendant and his girlfriend to a motel where they rented a room.

Dr. O. C. Smith, an expert in forensic pathology, assisted in the autopsy of the victim. The victim sustained a single gunshot wound that entered the right side of his chest and exited on the back side of the left chest. Powder burns and stippling on the victim's skin indicated that the shot was fired from a distance of two feet or less. The victim's death was a result of an intermediate gunshot wound to the chest and abdomen.

The jury, after being instructed on the elements of second degree murder and the lesser included offenses of voluntary manslaughter, reckless homicide, and criminally negligent homicide, returned a guilty verdict as to second degree murder.

In his appeal, the defendant concedes that homicide was proven but contends that the evidence was insufficient to support a knowing killing as required for second degree murder. Second degree murder is a "knowing killing of another." T.C.A. § 39-13-210(a)(1) (1997). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result[.]" T.C.A. § 39-11-106(a)(20) (1997).

The defendant contends that the evidence was only sufficient to support voluntary manslaughter, criminally negligent homicide, or reckless homicide.

"Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a) (2006).

Criminally negligent homicide is criminally negligent conduct which results in death. T.C.A. § 39-13-212(a) (2006). The culpable mental state is defined as follows:

> "Criminal negligence" refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

T.C.A. § 39-11-302(d) (2006).

> "Reckless homicide is a reckless killing of another." T.C.A. § 39-13-215(a) (2006). "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

T.C.A. § 39-11-302(c) (2006).

Whether the defendant's acts constitute a knowing killing (second degree murder) or, alternatively, a lesser offense is a question of fact for the jury. See State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). The degree of homicide is for the jury to decide in light of all of the facts in the case. State v. Keels, 753 S.W.2d 140, 143 (Tenn. Crim. App. 1988). Intent can seldom be proven by direct evidence but may be deduced or inferred by a jury from the character of the assault, the nature of the act, and the circumstances of the case in evidence. State v. Inlow, 52 S.W.3d 101, 105 (Tenn. Crim. App. 2000).

In the present case, the jury was presented with evidence that the defendant stated to the victim that he would kill on behalf of his son. During the initial confrontation, the victim remained calm and attempted to communicate with the defendant. The defendant grabbed Marcus, the victim's son, and placed the gun to his head while threatening to shoot him. The victim was unarmed at all times. The defendant attempted to enter the victim's residence with the weapon drawn until he was pulled back by the victim. The defendant shot the victim at close range and continued firing the weapon after falling from the porch and during his retreat to the car.

There was evidence which strongly indicated that shots were fired at the defendant's vehicle and its occupants. However, no witness stated that these shots were fired until after the victim was fatally wounded and the defendant's group was escaping the scene.

The degree of homicide was strictly within the province of the jury. The jury clearly rejected the lesser offenses. Our review, therefore, is merely to determine whether the evidence presented was sufficient to justify the conviction for second degree murder. We conclude that the evidence was sufficient and affirm the judgment of conviction.

_____
JOHN EVERETT WILLIAMS, JUDGE

-4-