# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 7, 2011

## STATE OF TENNESSEE v. ASHLEE N. APPLETON

**Direct Appeal from the Circuit Court for Marion County**
**No. 8697      Thomas W. Graham, Judge**

---

**No. M2011-00866-CCA-R3-CD - Filed February 15, 2012**

---

A Marion County jury convicted the Defendant, Ashlee N. Appleton, of tampering with evidence, and the trial court sentenced her to four years, to be served on community corrections after six months of incarceration. The Defendant appeals, contending that the State failed to establish the corpus delicti of the crime for which she was convicted. The State concedes the error, and both parties assert that this case be reversed. After a thorough review of the record and applicable authorities, we agree with the parties. Accordingly, we reverse and dismiss the Defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

M. Keith Davis, Dunlap, Tennessee, for the appellant, Ashlee N. Appleton.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; J. Michael Taylor, District Attorney General; David McGovern, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's disposal of a gun that had been used in a murder. The Defendant was indicted for tampering with evidence. At her trial on these charges, the following evidence was presented: Kenneth Mark Wilson, a special agent with the Tennessee Bureau of Investigation ("TBI"), testified that on September 8, 2009, he learned that police investigators were dispatched to a shooting that occurred in South

Pittsburg, Tennessee. A caller reported the shooting to police at 1:05 p.m., and Detective Gene Hargis called him at 1:13 p.m. to assist in the investigation.

Agent Wilson testified that, when he arrived at the crime scene, he saw the body of a deceased man located in the backyard of the residence, lying close to a car that was elevated on a car jack. The victim's body was shirtless, and clothed in only a pair of jeans. Agent Wilson noted that the victim's body was lying slightly on its left side and appeared to have sustained a single gunshot wound to his upper right back.

Agent Wilson testified that his investigation led police to a suspect, Jereese Edwards, whose trial was set for a date after the Defendant's trial. He recounted that, as part of his investigation, he attempted to find the gun, any witnesses to the crime, and to identify the suspects. In furtherance of the investigation, he interviewed both Jereese Edwards and the Defendant. Agent Wilson said he interviewed the Defendant, who was not a suspect in the murder, to try to find the location of the gun. The Defendant, who Agent Wilson described as "cooperative," was offered her Miranda rights. She then gave Agent Wilson a statement. The Defendant's statement to police, which was read into evidence, read as follows:

> Today at about 12:30 p.m. me, Heather Murray, and Kendra Mitchell went to South Pittsburg riding around. We pulled up in front of Bobby's house on Oak Street. Tamia Malone, Ronald, Jeresse's brother, and Ana Marvin were in the front yard when we pulled up. We stood in the front yard talking for a while and I said I wanted to leave. Me, Tamia, Heather and Ronald got in my car and went to the Sonic to get something to eat. We were gone maybe 20 minutes. We went back to Oak Street and everybody got out of my car. Me and Tamia were the last two to get out of my car. Heather and Kendra went to the back of the house and Tamia and I stayed around front.
>
> I heard a loud nose like a firework come from behind the house. After the noise everybody came running back around the front of the house. I got in my car. Kendra, Heather and Jereese got in my car and they all told me to go. We went to the interstate and got off at the New Hope exit. We started going the back way to Chattanooga and went over the blue bridge in South Pittsburg. When we got to the train tracks in New Hope, Jereese told me that the gun was in the car. Jereese didn't say anything the whole way until he said the gun was in the car.
>
> I told them that they had to get the gun out of my car. We were close to Nickajack Dam so we pulled in at the dam. When we got to the dam Jereese handed me the gun. I got out of the car and went a little bit out the walkway and threw the gun in the water near the rocks. The gun was a little bitty gun. It was chrome and beige handle. After I threw the gun in the water, I ran back

to my car and we left and went to Chattanooga.

We went to some house off 4th Avenue and dropped Jereese off. Jereese's mom was pulling in at the house at about the same time we pulled up. We left and came back to Heather's house.

After reading the Defendant's statement into evidence, Agent Wilson testified that the gun she described matched the description of the gun that officers believed was used to kill the victim.

Agent Wilson testified that the Defendant met him at the Nickajack Dam, where she showed him where she had thrown the gun. Agent Wilson said they enlisted the aid of a scuba search and rescue squad to search that area for the gun unsuccessfully for three days.

On cross-examination, Agent Wilson agreed that he did not videotape or audiotape his interview with the Defendant. He said the Defendant was twenty years old at the time of the interview and was not represented by an attorney. He agreed that there was no indication from the Defendant's statement that she knew that anyone had just been killed. Further, the Defendant said she heard a loud noise like a "firework" but never said she heard a gunshot. He acknowledged that, from her statement, it is not apparent that the Defendant was aware that any crime had been committed. Agent Wilson agreed that four or five witnesses saw Jereese Edwards shoot the victim and that his identity as the shooter was not in question.

Rebecca Thomas, the Chief of Volunteer State Rescue Squad, testified that four divers searched for the gun for numerous hours over the course of three days. The divers never found the gun.

Based upon this evidence, the jury convicted the Defendant of tampering with evidence, and the trial court sentenced her to four years, six months of which was ordered to be served in jail followed by three years and six months on community corrections.

## II. Analysis

On appeal, the Defendant contends that the State failed to prove the corpus delicti of tampering with evidence because the conviction was based on her confession alone. The State concedes the error.

"'Corpus delicti' literally means the body of the crime." *State v. Ellis*, 89 S.W.3d 584, 600 (Tenn. Crim. App. 2000). Two elements, which must be proven by the State beyond a reasonable doubt, make up the corpus delicti: "(1) That a certain result has been produced, and (2) That the result was created through criminal agency." *State v. Ervin*, 731 S.W.2d 70,

71–72 (Tenn. Crim. App.1986); *see Ellis*, 89 S.W.3d at 600. In addition to any confession by the defendant, some corroborating evidence is required to establish the corpus delicti of the offense charged. *State v. Smith*, 24 S.W.3d 274, 281 (Tenn. 2000). When the defendant has made a confession, however, the corroborative evidence "need not be as convincing as the evidence necessary to establish a corpus delicti in the absence of any confession." *Ricketts v. State*, 241 S.W.2d 604, 606 (Tenn. 1951). Whether the State has sufficiently established the corpus delicti is primarily a jury question. *State v. Jones*, 15 S.W.3d 880, 891 (Tenn. Crim. App. 1999).

In this case, the Defendant admitted in her statement to the police that she threw a gun into the water near Nickajack Dam. The Defendant, however, never admitted knowing that the gun had been fired, that the gun had been used to commit a crime, or that anyone had been injured or killed. The police never found the gun, and the State presented no other evidence that the Defendant had knowledge that the gun had been used in a crime or that she disposed of the gun. As such, we conclude that the evidence is insufficient to support her conviction of tampering with evidence. Accordingly, we reverse the judgment and dismiss the charge.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude that the State failed to prove the corpus delicti of the crime of tampering with evidence. The Defendant's conviction is, therefore, reversed and the charge against her is dismissed.

_____
ROBERT W. WEDEMEYER, JUDGE