IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 19, 2000 Session

## STATE OF TENNESSEE v. RICHARD C. SILK

**Direct Appeal from the Circuit Court for Rutherford County**
**No. M-46854     J. Steve Daniel, Judge**

---

**No. M1999-02526-CCA-R3-CD - Filed March 2, 2001**

---

The appellant, Richard C. Silk, was convicted by a jury in the Rutherford County Circuit Court of one count of resisting arrest, a class B misdemeanor. The trial court sentenced him to six (6) months incarceration in the Rutherford County Jail, assigning a service percentage of seventy-five percent (75%). The appellant now presents the following issues for our review: (1) whether the evidence adduced at trial is sufficient to support the appellant's conviction of resisting arrest; (2) whether the trial court erred in sustaining certain objections by the State to the appellant's testimony concerning a statement made to him by an arresting officer; and (3) whether the trial court erred in sentencing the appellant. Following a thorough review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

William W. Burton and Gerald L. Melton, Murfreesboro, Tennessee, for the appellant, Richard C. Silk.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General' William C. Whitesell, Jr., District Attorney General; and Paul A. Holcombe, III, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On January 6, 1999, a Rutherford County Grand Jury returned an indictment charging the appellant with one count of assault and one count of resisting arrest. The indictment arose from the ultimately successful efforts of officers of the Rutherford County Sheriff's Department on October 1, 1998, to execute a warrant for the appellant's arrest. On April 21, 1999, the State submitted a motion to the Rutherford County Circuit Court to dismiss the charge of assault. The trial

court granted the State's motion, and the State's prosecution proceeded to trial on April 22, 1999, solely on the basis of the charge of resisting arrest.

At trial, the State presented the testimony of Detective William Sharp and Sergeant Egon Grissom, both employed by the Rutherford County Sheriff's Department. The officers' testimony established that, in September 1998, a complaint was filed with the Rutherford County Sheriff's Department against the appellant. Accordingly, Detective Sharp and his partner, Detective Dinardo, drove to the appellant's workplace at Automotive Service, a business located on a main thoroughfare in Murfreesboro. At Automotive Service, Sharp spoke with the appellant, identifying himself as a law enforcement officer and notifying him concerning the complaint. Sharp also warned the appellant that, if he persisted in the behavior that had provoked the complaint, the issuance of an arrest warrant might be forthcoming. At trial, Sharp recalled that his encounter with the appellant on this occasion was cordial, notwithstanding the topic of conversation.

Subsequently, on October 1, 1998, Detectives Sharp and Dinardo were informed that a misdemeanor warrant had been issued for the appellant's arrest and were ordered to execute the warrant. Accordingly, the detectives obtained the warrant[1] and, at approximately 12:30 p.m. or 1:00 p.m., drove to Automotive Service. Because the detectives' vehicle was not equipped for the transportation of prisoners, Sergeant Grissom accompanied the detectives in a marked patrol car. Grissom was attired in a Rutherford County Sheriff's Department uniform.

When the three officers arrived at Automotive Service, the appellant was not present. Accordingly, they waited for several minutes, standing beside their vehicles in the parking lot. The appellant soon drove into the parking lot and stopped beside the three officers. When the appellant got out of his vehicle, Sharp informed the appellant that he had a warrant for the appellant's arrest. Additionally, Grissom explained to the appellant the basis of the arrest warrant. The appellant began to back away from the officers and also began "yelling and screaming" and demanding to see the warrant. Sharp testified at trial that he did not immediately show the warrant to the appellant because he had left the warrant in his vehicle and, moreover, a policy of the Rutherford County Sheriff's Department required officers to first secure arrestees in their custody.

Accordingly, Sharp and Grissom approached the appellant and ordered him to turn around and place his hands on his car. The appellant initially complied. However, when Grissom placed a handcuff on the appellant's left wrist, the appellant turned suddenly, swinging his right hand in the officers' direction and forcing Grissom to duck in order to avoid being struck in the head. Sharp then seized the appellant's right arm and attempted to assist Grissom in handcuffing the appellant, but the appellant continued to struggle. All three officers were required to restrain him.

---

[1] At the commencement of the trial, the appellant and the State entered into the following stipulation:
> On October 1st of 1998, William Sharp, a Detective with the Rutherford County Sheriff's Department and being a proper officer had in his possession . . . a duly issued and valid arrest warrant commanding him to arrest the Defendant, Richard Silk.

Afterwards, the officers attempted to escort the appellant to Grissom's patrol car, but the appellant was "kicking his feet" and screaming, "I want to see the warrant. You can't do this." Grissom recalled at the appellant's trial that the officers were forced, essentially, to carry the appellant to the patrol car. At some point, the appellant also began complaining that the handcuff restraining his right hand was too tight. However, the officers declined to loosen the handcuff while the appellant continued his efforts to resist arrest.

At Grissom's patrol car, the officers attempted to place the appellant inside the rear, "caged" portion of the vehicle, but the appellant propped his feet against the frame of the car door, again fighting with the officers. Grissom finally concluded that the appellant posed a danger to himself and the officers and sprayed the appellant with "Freeze Plus P," a chemical substance similar to Mace. The appellant immediately became compliant. At trial, Grissom noted that, during his twenty-year tenure as a law enforcement officer, he had only been forced to use Freeze Plus P or Mace on one other occasion.

The officers next drove the appellant to the "Rutherford County Ambulance Service," where the appellant was brought before a magistrate to determine whether the appellant had suffered any injuries and also to set a bail amount. At the Ambulance Service, Grissom loosened the appellant's right handcuff. Additionally, Sharp showed the arrest warrant to the appellant. Subsequently, at the Rutherford County Sheriff's Department, Sharp also read the warrant to the appellant.

The appellant testified on his own behalf at trial. The appellant initially conceded that, at the time of his arrest, he knew that Sharp, Dinardo, and Grissom were law enforcement officers. In this regard, he acknowledged that Grissom was wearing a uniform, and the three officers were standing beside a marked patrol car. He confirmed that, approximately one month before his arrest, he had spoken with Sharp concerning a prior complaint. Somewhat contradictorily, however, the appellant also testified that

> I . . . didn't know that Detective Sharp was an officer. He still hasn't identified himself by his badge or any other kind of other identification. As far as I know, he's still somebody's good buddy. This could be a pack of buddies out just to rouse some guy and have a good old time and exercise their testosterone.
>
> . . . .
>
> I was terrified. . . . I thought they were just a bunch of good old boys out to take somebody out and beat them up. I figured I was going to either end up dead in a hole somewhere or very seriously injured.

According to the appellant, he fully cooperated with the officers despite his "terror." The appellant asserted that the only "resistance" he offered comprised his persistent demands to see the arrest warrant. Moreover, upon being handcuffed, he realized that the right handcuff had been

fastened too tightly, causing him extreme pain. Indeed, the appellant claimed at trial that he suffered a significant cut to his right wrist due to the manner in which he was handcuffed. In any event, the appellant recounted that, as the officers escorted him to the patrol car, he sought to prevent his right wrist from moving, and he requested that the handcuff be loosened prior to his placement in the patrol car. The appellant noted at trial that he had "no intention . . . of jumping into a car like a trained porpoise." He also conceded that the officers had to "tackle[]" him in order to place him in the patrol car but denied that he did anything to provoke Grissom's use of Freeze Plus P.

At the conclusion of the trial, in addition to instructing the jury on the charged offense, the trial court instructed the jury on the justification of self-defense as set forth in Tenn. Code Ann. § 39-11-611 (1997). Nevertheless, following deliberation, the jury returned a verdict of guilt of resisting arrest. Pursuant to the jury's verdict, the trial court sentenced the appellant to six (6) months incarceration in the Rutherford County Jail, assigning a service percentage of seventy-five percent (75%).

## II. Analysis

**I.      Sufficiency of the Evidence**

The appellant first challenges the sufficiency of the evidence underlying his conviction of resisting arrest. In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Conversely, the State is entitled on appeal to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). This shifting of burdens stems from the principle that questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, should be resolved by the trier of fact and not this court. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, in overcoming the presumption of his guilt, the appellant must establish that "no reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn R. App. P. 13(e).

In this case, in order to convict the appellant of resisting arrest, the State was required to prove beyond a reasonable doubt, and the jury was required to find, that (1) the appellant obstructed an arrest by a person known to him to be a law enforcement officer; (2) the appellant used force[2] against the law enforcement officer; and (3) the appellant acted intentionally. Tenn. Code Ann. § 39-16-602(a) (1997). It is not a defense to a charge of resisting arrest that the arrest was unlawful. Id. at (b). However, under certain limited circumstances, self-defense can be a justification for resisting arrest, excluding criminal responsibility. Id. Moreover, "[t]he [S]tate has the burden of proof to negate the defense; the burden is not upon the defendant to prove the defense exists." State v. Belser, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996). Whether the State has met

---

[2]"'Force' means compulsion by the use of physical power or violence . . . ." Tenn. Code Ann. § 39-11-106(a)(12) (1997).

its burden is a question for the jury to determine. State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); State v. Woods, No. 03C01-9707-CR-00287, 1998 WL 751460, at *3 (Tenn. Crim. App. at Knoxville, October 29, 1998).

Subsection (a) of Tenn. Code. Ann. § 39-11-611 sets forth the following basic components of self-defense: (1) a person used or attempted to use unlawful force against the accused; (2) there existed a real danger of imminent death or serious bodily injury, or the accused honestly believed that the danger was real at the time of the accused's threat or use of force; and (3) the accused reasonably believed that he was threatened with imminent death or serious bodily injury, i.e., the belief was founded upon reasonable grounds. In the context of justifying resistance to an arrest, subsection (e) of Tenn. Code Ann. § 39-11-611 limits the application of self-defense, as defined above, to those instances in which "[t]he law enforcement officer uses or attempts to use greater force than necessary to make the arrest," and the accused "reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary." See State v. Mize, No. 03C01-9405-CR-00163, 1995 WL 562243, at *8 (Tenn. Crim. App. at Knoxville, September 22, 1995)(holding that subsection (e) is merely a restriction on the use of self-defense, and the statute should be read as a whole in considering whether the defense applies). The Sentencing Commission Comments explain:

> Subsection (e) represents a policy decision by the commission that the street is not the proper forum for determining the legality of an arrest. To a large extent, the rule is designed to protect citizens from being harmed by law enforcement officers. Research has shown that citizens who resist arrest frequently are injured by trained officers who use their skills and weapons to protect themselves and effectuate the arrest. If the defendant knows it is a law enforcement officer who has stopped or arrested him or her, respect for the rule of law requires the defendant to submit to apparent authority.

Tenn. Code Ann. § 39-11-611, Sentencing Commission Comments.

The appellant predicates his challenge to the sufficiency of the evidence upon two specific claims: (1) the evidence adduced at trial does not support a finding that the appellant intended to resist his arrest; and (2) the evidence adduced at trial established that the appellant acted in self-defense. In addressing these claims, we initially reiterate that "when witnesses give diametrically opposed versions of how an event occurred, we must presume [on appeal] that the trier of fact accredited the version in support of the state's position unless the record demonstrates conclusively the physical impossibility of that version." State v. Kemp, No. 02C01-9401-CC-00012, 1994 WL 568409, at *1 (Tenn. Crim. App. at Jackson, October 19, 1994). Therefore, we must assume that the jury in this case accredited the testimony of Detective Sharp and Sergeant Grissom. Once again, according to the officers' testimony, Grissom was dressed in uniform at the time of the appellant's arrest, the three officers were standing beside a marked patrol car at that time, and Detectives Sharp and Dinardo had previously identified themselves to the appellant as law enforcement officers. Moreover, we note that the appellant never requested any additional confirmation of the officers' identities during the course of his arrest. The arrest occurred during the

early afternoon at an establishment that was located on a main thoroughfare in Murfreesboro and was then open for business. The officers informed the appellant that they had a warrant for his arrest and that they were now executing the warrant. Additionally, Grissom explained to the appellant the basis of the arrest warrant. Nevertheless, the appellant used force to resist attempts by the officers both to handcuff him and to place him in the patrol car.

The appellant now claims that he did not "intend" to resist his arrest but, rather, "intended" to examine the arrest warrant and to avoid "irreparable" injury to his wrist. However, the appellant's argument confuses intent with motive. Regardless of the appellant's motives, the State's evidence established beyond a reasonable doubt that the appellant intentionally and forcefully obstructed efforts by known[3] law enforcement officers to arrest him. As to his motives, these are more relevant to potential defenses to, or justifications for, his resistance.

We first address the appellant's claim that he only wished to examine the arrest warrant. In this regard, we note that police do possess a small amount of flexibility in determining the precise time at which a warrant will be shown or provided to an arrestee. Tenn. R. Crim. P. 4(d)(3)(emphasis added) provides that an officer need not have a warrant in his possession at the time of the arrest "but upon request shall show the warrant to the defendant *as soon as possible.*" Tenn. Code Ann. § 40-6-216 (1997)(emphasis added) also provides that "[a] criminal defendant or such defendant's attorney shall have the right to request and receive *at a reasonable time* a copy of any warrant." In any event, assuming that the appellant wished to examine the arrest warrant for the purpose of ensuring the legality of his arrest, we have already noted that it is no defense to resisting arrest that the arrest was, in fact, unlawful. Tenn. Code Ann. § 39-16-602(b). A necessary corollary to this rule must be that an officer's failure to provide proof that the arrest is lawful by showing an arrestee the warrant is likewise no defense. Thus, the appellant in this case should have "acquiesced to the apparent authority of the officers and contested the matter in a court of law if he felt he had been wronged." State v. Bradley, No. 03C01-9408-CR-00298, 1996 WL 57945, at *2 (Tenn. Crim. App. at Knoxville, February 13, 1996).

The appellant also argues, however, that the officers' response to his reasonable request to examine the warrant constituted an unnecessary use of force justifying self-defense. Tenn. Code Ann. § 39-11-611(a) and (e). Preliminarily, we conclude that the evidence adduced at trial supported a finding by the jury that the officers's conduct in securing the appellant in their custody prior to showing him the warrant did not constitute an unnecessary use of force. Id. at (e). Again, at the time of the appellant's arrest, Sharp had left the arrest warrant in his vehicle. Nevertheless, before the officers effectuated the arrest, Sharp informed the appellant that he had an arrest warrant, and Grissom informed the appellant of the basis of the warrant. As noted previously, Sharp did not immediately retrieve the warrant from his car because a policy of the Rutherford County Sheriff's

---

[3]The appellant does not appear to challenge on appeal the jury's finding that he knew that the arresting officers were, in fact, law enforcement officers. Moreover, in view of the strong evidence adduced to the contrary, the jury was certainly entitled to reject the appellant's patently incredible testimony that he believed the arresting officers to be "a pack of buddies out just to rouse some guy and have a good old time and exercise their testosterone."

Department required the officers to first secure the appellant in their custody. Sharp explained at trial that this policy was intended to ensure the safety of the arrestee, the arresting officers, and the general public, as "the service of an arrest warrant can be a volatile thing . . . , and reading the warrant . . . generally only . . . aggravate[s] [the situation]." Indeed, even as the appellant in this case posed to the officers his "reasonable request" to examine the arrest warrant, he was "yelling and screaming" and backing away from the officers. More importantly, the evidence adduced at trial supported a finding by the jury that the officers' insistence upon effectuating the arrest prior to showing the appellant the warrant did not pose an imminent danger of death or serious bodily injury to the appellant or warrant a reasonable belief of such danger. Id. at (a). Therefore, the appellant's use of force was not immediately necessary to protect against the officers' use of force, even if greater than necessary. Id. at (e).

Finally, the appellant claims on appeal, as in the trial court, that the arresting officers also used unnecessary force in handcuffing his wrist too tightly and refusing to provide him relief prior to his placement in the patrol car. He asserts that the officers' insistence upon placing him in the patrol car before loosening the handcuff posed an imminent danger of serious or "irreparable" injury to his wrist or, at least, inspired a reasonable belief of such danger. However, the officers' testimony at trial established that any injury to the appellant or threat of injury occurred solely as a result of the appellant's resistance to a lawful arrest and the officers' necessary response thereto. In sum, based upon the testimony of the State's witnesses, a rational trier of fact could have found beyond a reasonable doubt that the appellant was guilty of resisting arrest and, moreover, did not act in self-defense within the meaning of Tenn. Code Ann. § 39-11-611. This issue is without merit.

## II.     State's Objections to the Appellant's Testimony

The appellant additionally contends that the trial court erred in sustaining certain objections by the State to his testimony concerning a statement made to him by Sergeant Grissom. Briefly summarizing events at trial, the appellant testified during direct examination that, when the officers attempted to place him in Grissom's patrol car,

> I couldn't get into the car, and I was complaining about my pain. And Officer Grissom who was in uniform was standing a distance of four to six . . . feet away. And he said, son, you're looking for a world of pain if you don't get into that car. And I - - what's he talking about, you know. Are they going to club me to death or what. You know, just visions - -

At this point in the appellant's testimony, the prosecutor objected "to all of this," without stating the basis of his objection. The trial court sustained the objection, apparently believing that the objection was directed at the appellant's speculation concerning the officers' possible retaliation should the appellant refuse to cooperate with them. Accordingly, the trial court instructed the appellant, "You are just to make comments about what was said, not what your thought process is." Upon resumption of direct examination and in accordance with the trial court's instruction, the appellant merely reiterated Grissom's comment. The prosecutor then stated, "I am going to object to that again." On this occasion, the prosecutor clarified that his objection was based upon the hearsay rule. Tenn. R. Evid. 802. The trial court preliminarily agreed but invited defense counsel to respond.

Defense counsel stated, "That's Your Honor's ruling. No need to respond." The trial court again sustained the prosecutor's objection.

On appeal, the appellant contends that Grissom's comment "was not offered for the truth of the statement but [to] show[] the state of mind of the defendant," which was, in turn, relevant to a justification of self-defense. Similarly, the appellant contends that any speculation in which he engaged at the time of his arrest concerning possible abuse by the officers was relevant to his defense.

We conclude that the appellant has waived this issue for purposes of appellate review. Tenn. R. App. P. 36(a) provides that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." In this case, the appellant offered the trial court no opportunity to rule upon his positions, now presented to this court, due to his failure to offer any response to the State's objections, even when expressly invited to respond by the trial court. The appellant also failed to include this issue in his motion for new trial. See Tenn. R. App. P. 3(e). Finally, upon careful review of the issue and the record in this case, we decline to exercise our discretion pursuant to Tenn. R. Crim. P. 52(b). State v. Smith, 24 S.W.3d 274, 282-283 (Tenn. 2000).

## III.    Sentencing

The appellant next argues that the trial court erred in sentencing him for the offense of resisting arrest by assigning him a service percentage of one hundred percent (100%) and denying him a sentencing alternative to incarceration. We initially note that, under Tenn. Code Ann. § 40-35-302(d) (1997), a trial court may not assign a service percentage of more than seventy-five percent (75%), and, in fact, the judgment reflects that the trial court assigned the appellant the maximum service percentage of seventy-five percent (75%). We also note that the record does not include a transcript of the sentencing hearing. Under Tenn. Code Ann. § 40-35-302(a), the trial court is not required to hold a separate hearing in imposing a sentence for a misdemeanor; nevertheless, the parties agree and the record reflects that the trial court conducted such a hearing in the instant case on June 18, 1999. The burden is upon the appellant to ensure that the record before this court conveys a fair, accurate, and complete account of proceedings relating to those issues that are the bases of appeal. Tenn. R. App. P. 24(b). The failure to do so results in a waiver of such issues and a presumption that the trial court's determinations are correct. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Accordingly, absent a transcript of the sentencing hearing, the appellant is not entitled to relief.

## III.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE