# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 20, 2001

## STATE OF TENNESSEE v. DAVID LUNSFORD

**Appeal from the Criminal Court for Monroe County**
**No. 99-184      Carroll L. Ross, Judge**

---

### No. E2000-01572-CCA-R3-CD
### March 6, 2001

---

The Defendant, David Lunsford, was convicted by a jury of aggravated burglary. In this appeal as of right, he asserts that the evidence was insufficient to support his conviction. We respectfully disagree; thus, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Lee Ledbetter, Assistant Public Defender, Athens, Tennessee, for the appellant, David Lunsford.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Charles M. Pope, Jr., Assistant District Attorney General.

### OPINION

The Defendant was convicted of aggravated burglary and sentenced to seven years as a Range II offender. In this appeal as of right, he challenges his conviction, arguing that the evidence was insufficient to support the jury's verdict.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102,

105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The proof at trial established that Christiana Upton, who lived in an apartment at 1300 Morris Street in Sweetwater, Tennessee, was awakened around 2:00 a.m. on September 18, 1999 by a "big bang." Ms. Upton went into her living room to investigate the noise and discovered that her small window air conditioner was outside the window but still plugged into the wall. She unplugged the air conditioner and began to back away, when she saw a man coming through her open window where the air conditioner had been. His entire upper body was inside the apartment, but his legs were still outside. He had his hands on the seat cushions of her couch, which was in front of the window. Ms. Upton was about five feet from the man, and she could see him because the stove light from the kitchen was shining into the living room, and the porch light was shining in through the window. Ms. Upton asked the man who he was and what he was doing, but the man only responded, "[I]t broke, it fell, it broke."

Ms. Upton ran screaming to the back of her apartment, where she woke her two young cousins who were staying with her. She then took her cousins and fled from the apartment. They went to Donzella Inman's house, where Ms. Upton called the police. The police arrived shortly, and Ms. Upton gave them a description of the man. She described him as a white male in his thirties having long hair worn in a ponytail and a mustache and wearing a blue and gray striped shirt. The police officers left to search for the suspect.

As a result of their investigation, the officers found the Defendant, who matched Ms. Upton's description. The Defendant was found approximately 1.5 to 2.5 miles from Ms. Upton's apartment. He denied being in the vicinity of Ms. Upton's apartment. Acting on the instructions of Detective Scott Webb, the officers took the Defendant to Ms. Upton's location to see if she could identify him. The officers arrived with the Defendant around 5:00 a.m. He was sitting in the back of the patrol car. The dome light was on in the car, and a flashlight was used to illuminate the Defendant. Ms. Upton identified the Defendant as the person who had climbed through her window. She said that she recognized the man's face and his striped shirt. The Defendant had a green pullover jacket on over the shirt, but Ms. Upton could see the shirt hanging out from under the jacket. Ms. Upton also identified the Defendant at trial as the person who entered her apartment.

The Defendant testified at trial that he was in a bar until almost midnight, when he left with a man named Mike who was going to give him a ride home in his white pickup truck. Mike stopped for liquor at a residence and then left the Defendant at the Exxon station on Vonore Road, from which the Defendant had to walk about four miles to get home. He denied that he was the person who entered Ms. Upton's apartment.

A person commits the offense of aggravated burglary when that person enters a habitation with intent to commit a felony, theft or assault. Tenn. Code Ann. §§ 39-14-402(a), -403. The indictment charging the Defendant specifically alleged that he entered Ms. Upton's habitation with the intent to commit a theft. While acknowledging that the evidence was sufficient to establish that the Defendant entered Ms. Upton's apartment, the Defendant argues that the evidence was insufficient to establish that he entered with the intent to commit a theft. He asserts that "there was no evidence at all presented at trial concerning what intent Mr. Lunsford may or may not have had that evening as he dangled halfway in the window."

The Defendant's argument that there was no evidence of his intent to commit theft must fail. The specific intent required for the offense of burglary may be established by circumstantial evidence. See Bollin v. State, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). This Court has maintained that "[i]n the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft." State v. Ingram, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998) (quoting Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973)); see also Hall, 490 S.W.2d at 496; State v. Chrisman, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994); State v. Avery, 818 S.W.2d 365, 367-68 (Tenn. Crim. App. 1991); State v. Burkley, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990). Here, there was evidence that the Defendant removed Ms. Upton's air conditioner from her window, and he then crawled inside the window at 2:00 in the morning without an "acceptable excuse." He entered her residence, where she had things of value. See Hall, 490 S.W.2d at 496. Thus, the jury could have reasonably and properly inferred from this evidence that the Defendant intended to commit theft when he removed Ms. Upton's air conditioner from her window and subsequently entered her residence.

The judgment of the trial court is affirmed.

 

_____
DAVID H. WELLES, JUDGE