# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 19, 2006

## STATE OF TENNESSEE v. MILLARD E. SMITH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-D-2975     Steve Dozier, Judge**

---

**No. M2005-01649-CCA-R3-CD - Filed June 28, 2006**

---

Millard E. Smith, the defendant, was indicted and stood trial on one count of aggravated rape. A jury convicted the defendant on the lesser included offense of rape (Class B felony). The defendant was sentenced as a repeat, violent offender to life without parole. He now appeals his conviction, asserting that the evidence was insufficient to convict. After review, we conclude the evidence was overwhelming and affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Ross E. Alderman, District Public Defender; and Emma Rae Tennent (on appeal), Amy Harwell and Katie Weiss (at trial), Assistant Public Defenders, for the appellant, Millard E. Smith.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Pamela Anderson and Dumaka Shabazz, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On June 23, 2003, the victim, M.C.,[1] and her boyfriend were waiting outside the Nashville bus station for her father to pick them up. The victim was beguiled by the defendant to go with him on his motorcycle and was taken to a deserted mobile home. The victim reported that the defendant raped her after threatening her with a knife. The defendant then returned her to the bus station. The jury returned a verdict of guilty of rape in lieu of the indicted charge of aggravated rape. On appeal, the defendant challenges his conviction on the sole contention that the evidence does not support the verdict. The factual evidence and the record as a whole compel us to affirm the conviction.

---

[1] The victim was seventeen years of age at the time of the offense. Our court policy is to withhold names of juvenile victims of sexual abuse.

Factual Background

Doug Smith, eighteen years old at the time of the defendant's trial, testified that he accompanied the victim by bus from Fort Myers, Florida, to visit her father in Manchester. Doug Smith and the victim were waiting outside the Nashville bus station in anticipation of the arrival of the victim's father in approximately two hours. The defendant rode by on his motorcycle, looked at then, and came back. After learning the two were waiting for a ride to Manchester, the defendant offered to take them in his car. Doug Smith went with the defendant ostensibly to get the defendant's car. However, the defendant dropped Doug Smith off at a car wash, saying his wife would object if Doug Smith was with him. The defendant had previously pointed to some women at a residence and said they were his wife and sister. When the defendant left and did not stop at the house he had pointed out, Doug Smith became alarmed and ran back to the bus station. He estimated that it took him fifteen to thirty minutes to return on foot. Upon his return, he did not see the victim and went inside to report to a security guard. The guard notified Metro Police. When Doug Smith went back outside, the victim was there. He stated that the victim was crying, her hair was messed up, and she looked as though she had been roughed up. Doug Smith provided police with a description of the defendant and his motorcycle. After Doug Smith and the victim returned to Florida, he was presented with a photographic lineup by Fort Myers officers. He immediately identified the defendant from the six pictures provided. On cross-examination, Doug Smith denied that his purpose in going with the defendant was to obtain marijuana. He said the defendant mentioned that he was delivering some marijuana.

The victim was nineteen at the time of trial. She reiterated that she and her boyfriend were waiting for her father to come from Manchester to take them there. After the defendant and Doug Smith left, the defendant returned. He told her that Doug was at his house and that they were to go there. The defendant put the victim's luggage in a locker, and she left with him on the motorcycle. The defendant drove to an abandoned trailer near a cemetery. The defendant told her that her boyfriend was inside, and they entered the mobile home. The victim veered into a bathroom, and the defendant followed. The victim stated that the defendant pulled a knife from his pocket and said he would slit her throat unless she had sex with him. The defendant instructed her to remove her clothes, and she dropped her blue jeans and underwear down. The defendant penetrated her vagina with his penis. The defendant complained that he "couldn't do it there" and pushed her into the hallway, then onto a bed in a bedroom. The defendant repeated the vaginal intercourse. The victim said she was hysterical and praying. The defendant stopped and said he could not enjoy the act due to her crying. The defendant did not use a condom, and the victim did not remember if he ejaculated. The victim recalled a pair of blue pants or shorts on the bed. She recalled that her rapist had a tattoo curved over his navel which she thought spelled S-M-I-L-I-Y. The defendant returned the victim to the rear of the bus station and left. The victim was reunited with Doug Smith at the station and made her report to the police. She was able to provide a sufficient description of the trailer and surroundings for police to find the location. Later she was taken back to the scene and confirmed that it was the trailer. The victim was taken to the hospital and given a medical/legal examination. On cross-examination, the victim admitted that she was not sure when the defendant first pulled the knife. She did not see the knife again after being in the bathroom. On redirect, the victim refreshed

her recollection by reading her report made the evening of the rape to the nurse practitioner. After doing so, she recalled that the defendant wiped his penis with the blue garment on the bed.

Metro Police Officer Richard Martin, Jr., was dispatched to the bus station in response to the victim's report. The officer said the victim was shaking, crying, and appeared scared. She provided a description of the rapist and said that he had pulled a knife. The victim also gave a description of the trailer and its surroundings. The victim confirmed the crime scene after Officer Martin took her to the area. The officer's report reflected that the victim had told him that the rapist had held a knife to her throat on the bed.

Another Metro officer, Kelvin Lusk, saw the victim at the bus station and stated she was visibly shaking, crying, and red about the face. The victim told him about the garment on the bed that the defendant used to wipe himself. Officer Lusk said that the trailer was located in an isolated area and that it had been used by drug addicts and prostitutes. The interior of the trailer was littered with trash, including needles and condoms.

Officer David Elliott worked with the Metro Sex Crimes Unit. Officer Elliott had searched recent traffic tickets for a motorcycle that matched the description provided by the victim and Doug Smith. A match was found, and the information was given to lead Detective Anthony McClain. Officer Elliott obtained video surveillance tapes from a warehouse business in the area near the crime scene. The tape was of poor quality but showed a motorcycle going in the direction of the trailer at 7:29 p.m. and returning from the opposite direction at 7:54 p.m.

Detective Anthony McClain, after receiving the defendant's name from Officer Elliott, prepared a photographic array which included the defendant. The lineup was sent to and administered by the Fort Myers, Florida Police to the victim and Doug Smith. Both separately identified the defendant. Detective McClain interviewed the victim the night of the incident, and she told him the defendant had forced her into the trailer at knife-point.

Detective McClain conducted a videotaped interview of the defendant. The interview was shown to the jury. The defendant, in this interview, provided an evolving version of events dependent upon what information he was led to believe that the officers possessed. Initially, the defendant could not recall the trailer. He did state that he had talked to the young couple at the bus station and had given Doug Smith a ride in order for Doug to obtain marijuana. The defendant claimed that he left Mr. Smith at the carwash and went home. He denied returning to the bus station. After being told by the interviewing officers that there was videotape of him and the victim on his motorcycle, the defendant's version changed. He admitted he went back and got the victim and, after leaving the bus station, he asked her for sex. The victim refused, they had words, and he took her back to the station. The defendant first denied that he entered the trailer and said that if his fingerprints were present, they were left at other times. When told, falsely, that both his and the victim's fingerprints were found inside the trailer, the defendant said the victim had gone in to use the bathroom. On several occasions during the interview, the defendant emphatically and profanely denied any sexual relations, consensual or otherwise, with the victim. At one point during the

interview, the defendant exposed his chest, showing his tattoos. One contained large letters curving over his navel with the word S-M-I-T-T-Y.

Deborah Ann Snedegar, a nurse practitioner, testified that she conducted the medical legal examination of the victim, which included taking vaginal swabs as samples. Ms. Snedegar also observed three fresh red marks on the victim's left shoulder and red marks on each arm.

Agent Hunter Greene, a forensic scientist with the Tennessee Bureau of Investigation, testified as to her findings from the samples received. Agent Greene had obtained DNA profiles from the victim and the defendant through a blood sample and oral swabs, respectively. The vaginal swab revealed the presence of spermatozoa. The DNA profile from the vaginal swab indicated a mixture of two individuals, the victim and the defendant.

Following Agent Greene's testimony, the State rested and the defendant testified on his own behalf. The defendant recanted his earlier denials that he did not have sex with the victim. The defendant testified that Doug Smith wanted marijuana and that he took Doug to a carwash to wait while the defendant obtained the marijuana. When the defendant returned, Doug Smith was gone. The defendant then went back to the bus station to talk with the victim in hopes that he could "get lucky." He told the victim he would take her to her boyfriend but, instead, carried her to the trailer and propositioned her. The victim at first refused the defendant's sexual suggestions but consented after he told her she would have to walk back to the bus station. The defendant claimed that they then engaged in consensual sex. The defendant denied any use or possession of a knife.

Analysis

The standard for an appellate court reviewing a sufficiency challenge is "whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002) (emphasis added); see also Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999). Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000); see also Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599.

A verdict of guilt by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence." Evans, 108 S.W.3d at 236 (citing Bland, 958 S.W.2d at 659). Nor may this court

substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Evans, 108 S.W.3d at 236-37.

The defendant argues on appeal that the jury's rejection of the original charge of aggravated rape lessens the victim's credibility to such an extent that the evidence is insufficient to support the jury's verdict of rape. We disagree. The jury could have rejected the aggravated rape charge due to the victim's inconsistent statements before and during trial as to when and to what extent the defendant used a knife to commit the crime. The jury, acting within their prerogative, obviously found the victim's accusation of rape credible. In accrediting the victim, the jury rejected the defendant's ever-shifting version of events concerning the encounter. During his initial interview, the defendant at first could not recall the abandoned trailer. He further insisted he had not taken the victim from the bus station. When told he was captured on videotape going to the crime scene, he admitted being there but denied entering the abandoned trailer. When told his prints were inside, he insisted that his prints were from prior liaisons he had enjoyed there. Throughout the interview, the defendant repeatedly and vehemently denied any sexual contact with the victim. At trial, the defendant was faced with DNA evidence of his sexual congress with the victim, and his version changed yet again to a claim that the victim had engaged in consensual sex with him. It is understandable that a rational fact finder would reject such an incredible and convenient changing version of events in favor of the victim's claim of rape. The record as a whole is thoroughly and convincingly supportive of the defendant's conviction. The judgment of conviction is hereby affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE