IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2006

## STATE OF TENNESSEE v. TIMOTHY HUTSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-02606     John P. Colton, Jr., Judge**

———————

**No. W2005-01812-CCA-R3-CD  - Filed November 3, 2006**

———————

Timothy Hutson, the defendant, appeals his jury conviction for premeditated first degree murder. He was sentenced to life imprisonment. On appeal the defendant presents a single issue, that the evidence does not support the jury's finding of premeditation. Our review reveals that sufficient evidence was presented, and we affirm the defendant's judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Robert Wilson Jones, District Public Defender, and Tony N. Brayton and Jim Hale, Assistant Public Defenders, for the appellant, Timothy Hutson.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jim Lammey and Dennis Johnson, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

This case concerns the killing of Lisa Hudspeth on January 18, 2003, in Shelby County. The victim was shot at close range in the head with a high velocity rifle while in the front yard of a residence occupied by Jimmy Smith. The facts surrounding the shooting were supplied at trial by witnesses present at the scene and a neighbor who was the only individual who witnessed the actual shooting.

Charles Stidmon, an Oklahoma resident, was staying at the Smith house on January 18. He testified that the victim was his girlfriend and was planning to return with him to Oklahoma that day. He stated that the defendant and the victim came to the Smith residence early that morning after being at the casinos the night before. The defendant accused the victim of taking his cell phone and

some rock cocaine, which the victim denied. Stidmon heard a gunshot while he was in the bathroom. He looked outside and saw the victim lying in the yard and the defendant leaving the scene in his truck.

Jimmy Smith testified that the defendant's and victim's return from the casinos woke him about 7:30 on January 18. He did not recall any conversation that took place. He stated that the defendant left after approximately thirty minutes. Smith was outside when the defendant returned and pulled his truck into the yard. Smith was occupied with jump-starting his vehicle and did not witness the shooting.

Tracy Green was also a guest at the Smith house on January 18. He heard the defendant accuse the victim of taking his cell phone. Green said the defendant seemed to be mad as he left the residence. When the defendant returned, Green was assisting Smith in starting his vehicle. He heard the gunshot and saw the victim drop to the ground. The defendant then placed a long weapon in the back of his truck, kicked the victim's body, and remarked that she was dead before leaving in his truck.

Eric Wallace witnessed the events from outside his house, which is directly across the street from Smith's residence. Wallace knew the victim and the defendant from seeing them in the neighborhood. On the morning of January 18, Wallace had seen the defendant's silver Dodge truck coming and going from the Smith residence. The defendant returned to Smith's about 9:00 a.m. and pulled his truck into the yard. The defendant unloaded two puppies and turned them loose. He then walked to the front door and yelled inside. The defendant returned to his truck and took a long object from behind the seat. The defendant sat in the driver's seat with his leg propping the door open. The victim came out of the house and approached the defendant. Wallace saw the defendant aim directly at the victim's head and fire the weapon. The victim fell to the ground within the span of the defendant's open truck door. The defendant "nonchalantly" kicked the victim's body twice and then backed the truck up approximately fifty feet. The defendant then got out and looked at the victim's body once more before driving away from the scene.

Scott Brown, a detective with the Horn Lake, Mississippi Police Department related that the defendant had made a complaint to his office on January 15, 2003. The defendant reported a theft of his debit card and named the victim as a suspect. The defendant furnished a picture of the victim and a printed form of activity concerning the debit card. Detective Brown initiated an investigation but closed the case upon learning of the victim's death.

Sergeant Scott Evans of the Horn Lake Police Department participated in a search of the defendant's residence and vehicle on January 18. Sergeant Evans described finding blood, brain matter, and hair on the inside and outside of the defendant's truck. A rifle was found resting on a gun rack inside the defendant's residence.

Agent Steve Scott of the Tennessee Bureau of Investigation testified as an expert in firearms identification. He tested the rifle seized from the defendant and found it to be in proper operating

condition with all safety features intact. Agent Scott described the weapon as a Ruger high velocity hunting rifle.

Dr. O. C. Smith, an expert in forensic pathology, testified that the autopsy revealed the victim's cause of death was a high velocity gunshot wound to the head. He also explained that high velocity wounds can result in a cavitation effect, causing tissues to be propelled away at a considerable distance.

The defendant, after voir dire, opted to remain silent. No defense proof was presented. The jury returned a verdict of guilt as to first degree premeditated murder.

Analysis

The defendant, in his sole appellate issue, contends that the evidence was insufficient to support a premeditated killing. After review, we respectfully disagree.

Our reviewing standard when considering a sufficiency challenge is "whether considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002). The presumption of innocence is removed by a guilty verdict and a presumption of guilt is imposed, thus shifting the burden to the defendant to demonstrate why the evidence is insufficient. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). The jury resolves all questions about the credibility of witnesses, the weight and value of the evidence, and all factual issues. Evans, 108 S.W.3d at 236.

First degree murder is "a premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1) (2003). "'[P]remeditation is an act done after the exercise of reflection and judgment" and "means that the intent to kill must have been formed prior to the act itself." Id. § 39-13-202(d). "'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Id. § 39-11-106(a)(18) (2006).

The determination of the existence of premeditation is a question of fact to be resolved by the jury from the circumstances surrounding the killing. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Several non-exclusive circumstances have been identified that would justify a jury's finding of premeditation: the use of a deadly weapon upon an unarmed victim; the particular cruelty of a killing; a defendant's threats or declarations of intent to kill; the defendant's procurement of a weapon; any preparations to conceal the crime undertaken before the killing; destruction or secretion of evidence of the killing; and a defendant's calmness immediately after a killing. See State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). A jury is not limited to any specific evidence in finding or inferring premeditation, but it may be established by any evidence from which a rational jury may

infer that the killing occurred after the exercise of reflection and judgment. State v. Davidson, 121 S.W.3d 600, 615 (Tenn. 2003).

Evidence in this case provided ample support for the jury's finding of the element of premeditation. There was proof that the defendant had filed a formal complaint against the victim for theft of his debit card three days before the killing. On the morning of the shooting, the defendant accused the victim of stealing his cell phone and a quantity of cocaine. The defendant used a hunting rifle to shoot the unarmed victim. As the victim's body lay prostrate, the defendant kicked her and commented, "yep, she's dead." The defendant's callous conduct supported an inference that he intended to kill the victim and was satisfied with her death.

Conclusion

After review of the record, we conclude that the verdict was the product of a rational jury and was supported by sufficient evidence. The judgment of conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE