# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2012

## STATE OF TENNESSEE v. MAURICE JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 1002315      Chris Craft, Judge**

_____

**No. W2011-01079-CCA-R3-CD  - Filed May 29, 2012**

_____

The defendant, Maurice Johnson, was convicted by a Shelby County jury of rape, a Class B felony.  He was subsequently sentenced, as a Range II offender, to twenty years in the Department of Correction, to be served at 100%.  On appeal, he raises the single issue of sufficiency of the evidence.  Following review of the record before us, we find no error and affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Harry E. Sayle, III, Memphis, Tennessee; Stephen C. Bush, District Public Defender; and Jim N. Hale, Jr., Assistant Public Defender, for the appellant, Maurice Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Alanda H. Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The charges against the defendant, who was in his fifties, arose from his acts against the ninety-nine year old victim.  The defendant considered the victim to be like a

grandmother to him, having known her since he was a child when his mother married one of the victim's sons.

Jimmie Brown, the victim's son, testified that at the time of the crime in October, 2009, his mother was supposed to be living alone in Memphis; however, for several years the defendant had stayed with her occasionally, despite being told by the family that they did not want him there. According to Mr. Brown, his mother was unable to cook and clean because of her age and health, so he brought the victim all her meals and had the house cleaned. Mr. Brown was appointed as power of attorney, handled all the victim's business, and checked on her two to three times daily. He indicated that the victim was frail and used a walker to get around.

On October 4, 2009, Mr. Brown went to the victim's home around 10 a.m. to give her medication before going to church. After church, he returned to the victim's home and was let in by the defendant because the victim was still in bed. However, the victim told Mr. Brown that she wanted to talk to both him and the defendant. The victim then stated that the defendant had been forcing her to have sex and had told her that he would kill her if she told anyone. Based upon her disclosure, Mr. Brown immediately called the police. Prior to leaving the home, the defendant told Mr. Brown that the victim had gotten hurt when he was "wrestling" with her. The victim was subsequently taken to the Rape Crisis Center where an examination was conducted.

A forensic nurse performed a physical examination of the victim and collected a rape kit. During the pelvic examination, the nurse was unable to use the speculum to collect the evidence from the victim because she suffered from introitus stenosis, which is a narrowing of the vaginal opening which occurs with age. The nurse did not observe any bruising, tearing, or lacerations in the genital area, which, in her opinion, made it impossible to confirm or negate the possibility of sexual assault. However, as the nurse began to spread open the vaginal lips in order to collect the samples, the victim complained that she was uncomfortable and that the nurse was "poking around" in her vagina "like [the defendant] with his peter." Based on her experience, the presence of sperm inside the vaginal vault and the victim's complaint of vaginal pain indicated penile penetration had occurred.

Officer Charles Lowrie of the Memphis Police Department was dispatched to the home in response to Mr. Brown's call. When he arrived, he noted that the victim appeared to be coherent and communicated well with him. The victim told him that the defendant had touched her underneath her clothes and had "wrestled" with her. When asked if the defendant had had sex with her, the victim responded that "he had been going up inside of her." Lieutenant Wilton Cleveland and Sergeant Stephen Cody Wilkerson also spoke with the victim about the incident. An investigation was conducted at the victim's home, and an

alternate light source device revealed the presence of semen on the victim's bed sheets and a pair of her underwear.

Based upon the comments made by the victim, the defendant was developed as a suspect. After conducting a search for him, the defendant was eventually found in a barber shop. When approached by the officer, the defendant replied, "I was wondering when y'all were going to come looking for me." After being advised of his rights, the defendant agreed to talk to Sergeant Wilkerson. He acknowledged that he had been living with the victim for over a year and that they slept in separate bedrooms. With regard to the victim's memory problems, the defendant indicated that the victim had forgotten who he was, but had never mistaken him for someone else. He adamantly denied having any sexual contact whatsoever with the victim. He did acknowledge that he had "wrestled" with her on one occasion when she was trying to wrap a coat hanger around a door. When asked about the rape allegations, the defendant simply stared at the floor and eventually stopped responding to the questions asked. DNA samples were collected from the defendant.

Later testing by the Tennessee Bureau of Investigation revealed the presence of spermatozoa on the vaginal swabs, and, because of the large number of sperm found, it was estimated that the sperm was probably deposited twenty-four to forty-eight hours prior to collection. The DNA profile found on the vaginal swabs matched the defendant's DNA profile.

Based upon these acts, the defendant was indicted for three counts of rape. At the subsequent jury trial, the defendant testified and again denied that he had raped the victim. He acknowledged that he had resided with the victim, indicating that it was he, not the victim's son, who cooked, cleaned, ran errands, and served as security for the victim. However, he testified that, on the night of the alleged rape, he was not in the home. He indicated that the victim had given him money to stay at a boarding house that evening because of problems with her son. He continued, however, to state that on the evening prior, he had been asleep in his bed and woke up to find that the victim, who was naked, had gotten into bed with him. According to the defendant, the victim asked him "can you give me a little bit?" He said that he initially refused her request, but he changed his mind because she had let him move in with her and he felt obligated to her. However, he denied that he had penetrated the victim, claiming instead that the victim had masturbated him. He stated that the victim had tried to insert his penis, but was unable to do so. He maintained that he had ejaculated on the outside of her vagina.

Because of her advanced Alzheimer's disease, the victim was unable to testify at the trial. The court declared her unavailable, and evidence was introduced through other witnesses accordingly.

After hearing the evidence presented, the jury convicted the defendant as charged in all counts. The trial court subsequently merged counts two and three into count one and sentenced the defendant, as a multiple offender, to twenty years at 100%. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction for rape. When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *see also State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *Id*. "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

With respect to circumstantial evidence, our supreme court recently overruled *State v. Crawford*, 470 S.W.2d 610 (Tenn. 1971), and its requirement that, to prove a defendant's guilt based on circumstantial evidence alone, the State must present proof "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 380-81 (Tenn. 2011). The court held that direct and circumstantial evidence should be treated the same way in evaluating sufficiency of the evidence challenges. *Id*.

The defendant was convicted of rape which is the unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;

(2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent;

(3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless[.]

T.C.A. § 39-13-503(a) (2010). "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" T.C.A. § 39-13-501(7). The occurrence of penetration, although statutorily defined, is a question of fact. *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001). "Force" is defined as "compulsion by the use of physical power or violence and shall be broadly construed[.]" T.C.A. § 39-11-106(a)(11). In connection to rape, "coercion" is defined in part of the "threat of kidnapping, extortion, force, or violence to be performed immediately or in the future[.]" T.C.A. § 39-13-501(1).

On appeal, the defendant contends that the evidence in not sufficient because the State's proof failed to establish that force or coercion were involved, that the victim did not consent, or that she was mentally defective, mentally incapacitated, or physically helpless, challenging all three of his alternative convictions despite the merger into a single offense. The defendant specifically contends that there is no proof in the record which would allow a jury to find beyond a reasonable doubt that the sexual penetration was without the victim's consent. He argues that the proof establishes that she was in fact capable of consent on that date and, we assume, that she gave it based upon the defendant's testimony. However, we are unpersuaded by this argument. There is ample proof in the record that the victim did appear to be competent on the date of the rape; however, there is no proof, other than the defendant's assertion, which the jury was free to discredit, that the victim did in fact give her consent. Rather, the record is clear that the act was accomplished by force and coercion of the victim. The victim told Officer Lowery that the defendant had wrestled with her in order to complete the rape. She further stated that the defendant had forced her to have sex against her will and that he had threatened to kill her if she told anyone. Based upon its finding of guilt, the jury, as it was free to, chose to reject the defendant's testimony regarding the victim's alleged consent and the story that it was the victim who initiated the sexual contact.

The defendant also relies upon the fact that there was no physical evidence of force or violence, such as scratches, bruises, or cuts, to definitively support that a sexual assault had occurred. He contends that this lack of findings is particularly telling given the condition

of the victim's vaginal area based upon her age. However, the defendant's argument ignores that "force" or "coercion" is not limited to physical injury to a victim. Rather, it is the "use of physical power or violence" to accomplish a criminal act. *See* T.C.A. § 39-11-106(12). The testimony of the victim, combined with the other evidence presented, was sufficient to establish that this act was accomplished by force or coercion.

When viewed in the light most favorable to the State, the evidence established that the defendant did in fact penetrate the victim vaginally based upon the presence of his DNA contained in the sperm found in the victim's vagina. The victim gave testimony that this did occur, telling Officer Lowery that the defendant "had been going up inside of her." The victim further told the nurse who was attempting to insert a Q-tip into the vagina during the pelvic examination that she was "poking around" in her vagina "like [the defendant] with his peter." As noted above, there was ample proof to establish that this act was completed absent consent and by force or coercion. Thus, the defendant has failed to establish his entitlement to relief.

**CONCLUSION**

Based upon the foregoing, the judgment of conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-6-