IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2013

**STATE OF TENNESSEE v. JOHN D. PRUITT**

**Appeal from the Circuit Court for Grundy County**
**Nos. 4894, 4895, 4896    Thomas W. Graham, Judge**

**No. M2012-02353-CCA-R3-CD - Filed August 15, 2013**

Appellant, John D. Pruitt, entered guilty pleas to vandalism of property valued at more than $500 but less than $1,000, burglary, felony escape, and theft of property valued at $10,000 or more but less than $60,000. Pursuant to the terms of the guilty plea, appellant received an effective six-year sentence, and the State dismissed the remaining charges against him. The parties submitted the issue of alternative sentencing to the trial court for determination. Following a sentencing hearing, the trial court ordered the effective six-year sentence to be served in the Tennessee Department of Correction ("TDOC"). Appellant contends that the trial court did not properly consider his request for split confinement. Following our review, we discern no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

B. Jeffery Harmon, District Public Defender; and Robert G. Morgan, Assistant District Public Defender, Jasper, Tennessee, for the appellant, John D. Pruitt.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; J. Michael Taylor, District Attorney General; and David Shinn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

This appeal arises from the trial court's denial of alternative sentencing following appellant's guilty pleas to several criminal offenses.

A. Guilty Plea Submission Hearing

On August 13, 2012, appellant pleaded guilty to four offenses stemming from four separate events. The State offered the following factual bases for each of the pleas:

> In the first case, . . . he is going to enter the plea to vandalism over $500 . . . .
>
> The testimony would be . . . that . . . on August 3, 2011, . . . [Officer Josh Brown] made an arrest of [appellant] for disorderly conduct and possession of drug paraphernalia, and while he was transporting [appellant] to the Grundy County jail, [Officer Brown] came upon another crime scene, [and] he had to stop and assist another officer. While he was assisting that officer, [appellant] damaged the inside of the patrol car and actually broke the door. [He] [w]as able to get out of the door, out of the car, and he escaped from the car. The deputy would testify that the amount of damage done to the vehicle was at least $500.
>
> . . . .
>
> [In] [t]he next case, . . . [appellant] is entering a plea to a burglary. . . .
>
> The testimony would be that on October 22, 2011, a burglary . . . occurred at the Summerfield Market here in Grundy County. The owner contacted the Monteagle Police Department. [Officer] Jack Hill . . . investigated. There was a video surveillance camera in the store, and during the burglary[,] several items were taken, including what is called ["]Marty["] incense, which would be . . . like a synthetic marijuana. . . . [O]n the video camera[,] [Officer] Hill could see the person who broke into the store . . . and would identify that person as being [appellant], and the owner would testify he did not give [appellant] permission to burglarize his store. . . .
>
> . . . .
>
> [In] [t]he next case. . . [,] [h]e's entering a plea of guilty to escape. . . .
>
> The testimony would be that on November 24, 2011, [appellant] was an inmate at the Grundy County Sheriff's Department. During a cell search, the

correctional officers discovered [appellant] . . . was no longer in the jail, and he was then later apprehended outside the jail by the officers, and he was being held in custody on a felony charge. . . .

In [the last] case. . . [,] he's going to enter a plea of guilty to theft over $10,000. . . .

The testimony would be that Phillip Sons and Tammy Sons owned an outbuilding that was near their home. In that outbuilding was a four-wheeler, an off-road vehicle, and . . . on November 26, 2011, that four-wheeler turned up missing. [Appellant] was found at another location in Grundy County by [Investigator] Chip Andy, and he was in possession of this four-wheeler. The four-wheeler was identified by the Sons as being their property, and . . . the value of the property is over $10,000. . . .

Based on the foregoing facts, appellant entered guilty pleas to vandalism of property valued at more than $500 but less than $1,000, burglary, felony escape, and theft of property valued at $10,000 or more but less than $60,000. Pursuant to the terms of the plea agreement, he received a two-year sentence for vandalism, a two-year sentence for burglary, a one-year sentence for escape, and a three-year sentence for theft. The sentences for vandalism and burglary were ordered to be served concurrently, and the sentences for escape and theft were each to be served consecutively to each other and to the aforementioned two-year sentence, resulting in an effective sentence of six years. In conjunction, the State dismissed the charges of vandalism of the Summerfield Market, theft from the Summerfield Market, burglary of the Sons' outbuilding, vandalism of the Sons' four-wheeler, disorderly conduct, and evading arrest. The parties agreed to submit the issue of alternative sentencing to the trial court.

B. Sentencing Hearing

At the September 28, 2012 sentencing hearing, appellant testified that he was twenty-one years of age, had been using drugs for several years, and did not complete high school. His biological father died from a methamphetamine overdose when appellant was twelve years old. Appellant's stepfather died from a drug overdose, and his brother had a drug problem. Appellant indicated at the hearing that he began using drugs and alcohol while he was in high school. His friends at the time encouraged the behavior.

Appellant admitted that in August 2011, he burglarized the Summerfield Market after business hours. He stole "Marty" incense, which is a form of synthetic marijuana, and cartons of cigarettes. Appellant testified that when he committed the offenses, he was

intoxicated from taking multiple one-milligram doses of Xanax and drinking a pint of Wild Turkey bourbon. Thus, appellant had little memory of the events of that evening due to his allegedly intoxicated state. When cross-examined as to why he broke into the store, appellant stated that he had no "good" reason. He indicated that due to his intoxicated state, he "didn't care that day about much."

Appellant was subsequently arrested for vandalism, burglary, and theft. However, while being held in jail on the charges, appellant escaped. He testified at the hearing that a jail guard, Ramsey Womack, was disliked by many of the inmates. In fact, appellant said that many of them wanted to file grievances against the jailer. Appellant alleged that in return for his convincing the other inmates not to file the grievances, Mr. Womack left a jail door unlocked through which appellant could freely exit the jail. Appellant and inmate Ronald Meeks left the jail and went to a local convenience store where they purchased alcohol. Both of them then returned to the jail. On a subsequent occasion, appellant and Mr. Meeks exited the jail via the same route to purchase tobacco products. However, on that occasion, a guard discovered Mr. Meeks slipping back over the prison fence. Appellant hid in the woods to avoid capture. When the guard took Mr. Meeks inside, he used the door through which they had left and locked it behind them. Appellant was, therefore, locked out of the jail.

Appellant testified that he did not turn himself in at the jail. Rather, he found a telephone and called friends to pick him up. He and his friends then stole a four-wheeler and rode it through the neighboring woods while intoxicated. The police found appellant several days later in the garage of the owner of the four-wheeler. The owner later told police that the four-wheeler suffered approximately $1,000 damage as a result of the ride through the woods. Appellant could not account for the damage to the four-wheeler.

The trial court noted appellant's extensive criminal record from Coffee County. At the time of the Summerfield Market burglary, appellant was on probation as a result of several guilty pleas. Appellant had been charged with aggravated burglary and theft over $1,000 resulting from two separate incidents. Appellant burglarized a home, and he also stole a lock box containing cash from a vendor at a flea market. In addition, in July 2010 – a year before the Summerfield Market burglary – appellant was charged with aggravated assault after a confrontation with the cousin of his girlfriend. Appellant ultimately pleaded guilty to misdemeanor assault. The prosecutor in Coffee County offered appellant a plea bargain disposing of all counts. The State agreed to an effective four-year suspended sentence if appellant abided by the terms of his probation, which included anger management classes. In the year between the Coffee County plea bargain and the Summerfield Market burglary, appellant completed only one class and submitted to one alcohol and drug assessment.

At the sentencing hearing, the trial court expressed a desire to place appellant in the drug court program because of appellant's youth and because of his underlying drug problem and statements indicating that he would welcome help. However, appellant was not eligible for the drug court program because of the assault conviction in Coffee County. The trial court also commented on the probability that the Coffee County trial court would revoke appellant's probation based on his committing new offenses and his failing to comply with the terms of his suspended sentence.

The State indicated that it considered appellant's youth when recommending the length of his sentences, stating that he received "the lowest amount of time on each sentence that he could get." Further, the court noted that after an offender violated probation by committing new crimes, he is rarely granted probation for the new offenses. In passing sentence, the trial court discussed the three primary factors to consider when ordering a sentence involving confinement and determined that all three factors applied to appellant's case. *See* Tenn. Code Ann. § 40-35-103(1) (2010).

First, given the age of appellant and the number of serious crimes he had already committed, the trial court opined that confinement would serve to protect the public from a defendant with an extensive criminal history. *See id.* § 40-35-103(1)(A). Second, the court reasoned that if appellant were allowed to commit several serious crimes and receive only probation, deterrence would be negligible, and the seriousness of the offenses would be denigrated. *See id.* § 40-35-103(1)(B). Third, appellant was on probation at the time of the Summerfield Market burglary, thus supporting application of the factor that other less restrictive measures had been applied unsuccessfully. *See id.* § 40-35-103(1)(C). The trial court noted that "everything points to just incarceration."

The State suggested the ("TDOC") boot camp as an alternative to incarceration. If appellant could complete the 120-day program, he would be placed on probation. Appellant's counsel stated that he would be amenable to the idea. The State stressed to the court that the program is intensive and strict, and given appellant's history of escape from jail, he may not be able to conform to the rigors of the program. When asked by the trial court, however, appellant indicated he was interested in pursuing the option. Ultimately, based on the record and testimony at the sentencing hearing, the trial court sentenced appellant to six years in TDOC but recommended the boot camp program.

## II. Analysis

Appellant challenges the imposition of a sentence of full confinement, arguing that he should have received a sentence of split confinement.

A. Standard of Review

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -210(b) (2010); Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010 & Supp. 2012).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2012); Tenn. Code Ann. § 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

A trial court should base its decision regarding alternative sentencing on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2010).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

### B.  Denial of Alternative Sentencing

Appellant claims that the trial court erred by failing to consider his request for split confinement. In his brief, he argues that "the trial court failed to reflect on whether a sentence of continuous confinement to be served in a local jail or workhouse in conjunction with a term of probation . . . was an appropriate sentence."

At the sentencing hearing, appellant's counsel asked the court to fashion a remedy that would demonstrate to the Coffee County trial court, where appellant had yet to answer for his probation violation, that appellant had been accepted into a facility or program that would be amenable to the Coffee County court. Counsel requested that the court consider "one year of split confinement on each one of these cases[,] and that would certainly keep [appellant] in jail for a bit longer." In sum, because there were four cases integrated into the plea agreement, counsel asked the court for a split sentence of four years to serve rather than six years.

-7-

It should be noted that counsel's request embodied a remedy that is precluded by law. Tennessee Code Annotated section 40-35-306 provides that "[a] defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse, with probation for a period of time up to and including the statutory maximum time for the class of the conviction offense." Pursuant to the statute, the trial court could only have imposed a one-year sentence in the local jail. However, according to the terms of the plea agreement, three of the four sentences were to be served consecutively to each other. To have accepted appellant's request, the trial court would have imposed four one-year sentences, three of which were aligned consecutively, rendering an effective three-year sentence in the local jail. The trial court was without jurisdiction to sentence appellant in this fashion.

Moreover, as noted above, the trial court sentenced appellant to a six-year sentence in confinement but recommended that he be accepted into the boot camp program of TDOC. If successful, appellant would be released on probation after completion of the 120-day program. Appellant, through counsel, acquiesced in the trial court's ruling, stating, "I wouldn't object to that[.] Judge, that's a good program for young men like this." The State advised that if appellant failed to comply with the terms of the program, he would be placed into the general population section of the prison. The trial court inquired of appellant whether he wanted to attempt the boot camp program, to which appellant answered, "Yes, Your Honor."

We first observe that because appellant[1] acquiesced in the trial court's ruling, he cannot now complain about the sentence he received. "[I]t is well-settled that a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct.'" *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) (quoting *Norris v. Richards*, 246 S.W.2d 81, 85 (1952)); see also *State v. Smith*, 24 S.W.3d 274, 279-80 (Tenn. 2000); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

We must also note that the trial court's recommendation that appellant be placed in boot camp has been deemed a "non-incarcerative" sentence by this court because successful completion of the program results in a suspended sentence. *See State v. Cole*, No. 02C01-9708-CC-00324, 1998 WL 305375, at *3 (Tenn. Crim. App. June 11, 1998) (classifying total probation, split confinement, and the TDOC boot camp program as non-incarcerative

---

[1] We note for the record that appellant was represented by the same attorney at trial and on appeal.

alternative sentences). Thus, appellant's argument that the trial court declined to consider his request for split confinement, another form of a non-incarcerative sentence, is contrary to the law.

This court is aware that the trial courts are without jurisdiction to "sentence" a criminal defendant to the boot camp program; the trial courts may only recommend that TDOC place the offender in said program. As such, should TDOC reject the trial court's recommendation, we nonetheless conclude that appellant is not entitled to relief.

In determining the manner of service of appellant's sentence, the trial court considered the factors set forth in Tennessee Code Annotated section 40-35-103(1) regarding sentences involving confinement. The trial court stated:

> Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct. He has about as long a history as he could given his age. . . .

> Confinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit the offense. Certainly, you . . . commit three or four crimes and get an immediate probation doesn't speak [too] highly of the seriousness of the crime.

> Then[,] the third consideration is [that] measures less restrictive than confinement have frequently or recently been applied unsuccessfully[,] and that . . . applies. Recently[,] he was on probation[,] is on probation now[,] and did all these things.

> So everything . . . points to just incarceration.

The record supports the trial court's sentencing determination. The presentence report indicates that appellant was previously convicted of assault (reduced from aggravated assault), aggravated burglary, and various driving infractions. He was on probation in Coffee County for the previous offenses when he committed the multitude of offenses in the instant case. In addition to the offenses to which he pleaded guilty, appellant garnered several additional charges that were either dismissed pursuant to the plea agreement or for which the grand jury did not return indictments. Given appellant's lack of success in complying with the terms of his probation and his committing new offenses while on probation, taken together with the statutory factors governing sentences involving confinement, the trial court

did not abuse its discretion in ordering appellant to serve his effective six-year sentence in confinement.

## CONCLUSION

Based on the record as a whole, the briefs of the parties, and the applicable law, we discern no error and affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE